**NEXUS RECOVERY CENTER, INC., Appellant,**

v.

**Angela Sue MATHIS, Appellee.**

**No. 05–09–00273–CV.**

Court of Appeals of Texas, Dallas.

Feb. 10, 2011.

Glynis L. Zavarelli, Kevin L. Wentz, Wentz & Zavarelli, L.L.P., Irving, for Appellant.

Christopher J. Schwegmann, Jeffrey M. Tillotson, Lynn Tillotson Pinker & Cox, LLP., Dallas, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice MOSELEY.

Appellee Angela Sue Mathis sued appellant Nexus Recovery Center, Inc. pursuant to chapter 81 of the Texas Civil Practice and Remedies Code, which relates to sexual exploitation by a mental health services provider. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 81.001–.0010 (West 2005). The issue in this appeal is whether her causes of action are also health care liability claims, and thus subject to the expert report requirements of section 74.351 of the Texas Civil Practice and Remedies Code. *See id.* § 74.351 (West Supp. 2010). Based on our analysis of the essence of her causes of action, including the alleged wrongful conduct and the duties allegedly breached, we conclude they are not. Thus, we affirm the trial court's order denying Nexus's motion to dismiss.

## I. FACTUAL BACKGROUND

For purposes of appeal, we take our factual recitation from the allegations in Mathis's pleadings. Nexus is a residential and outpatient treatment center for women with alcohol and drug problems. Mathis enrolled in a residential treatment program at Nexus in March 2005. She was pregnant, suicidal over the death of the baby's father, and concerned over the pregnancy.

Nexus assigned Oletha Morrow to Mathis to provide counseling services to her. Mathis "knew that Ms. Morrow was bisexual based on their prior conversations, but was not otherwise concerned by this knowledge. [Mathis] did observe behavior on Ms. Morrow's part that she perceived to be flirtatious."

Mathis's baby was born in early June 2005, and Mathis remained at Nexus for the next two weeks. After Mathis left Nexus, Morrow frequently contacted her and "expressed amorous feelings" towards her. During the first week of September 2005, Mathis moved into an apartment, and later that month she had surgery. Approximately one week later, Morrow went to Mathis's apartment and "initiated an intimate sexual relationship."

Thereafter, Mathis became dependent on and emotionally attached to Morrow. Mathis gave Morrow money from her disability payments with which to pay Mathis's bills, and Morrow took other money. However, in mid-March 2006, Mathis became suspicious that Morrow was taking advantage of her and became suicidal and despondent. Mathis reported her concerns to Nexus, which investigated the circumstances and fired Morrow.

## II. PROCEDURAL BACKGROUND

Mathis filed suit in March 2008, alleging a cause of action against Nexus for negli-

gence, negligent hiring, supervision, training, and/or retaining Morrow, and breach of fiduciary duty. She alleged she suffered great emotional anguish from Morrow's initiation of sexual activity and betrayal and significant financial losses due to Morrow's conversion of her disability payments.

Four months later Mathis amended her pleadings. The pleaded facts were unchanged, but instead Mathis alleged that Morrow's actions and Nexus's omissions violated chapter 81 of the civil practice and remedies code. Specifically, she alleged she suffered mental and emotional injury caused by, resulting from, or arising out of "sexual contact" between her and Morrow, and "sexual exploitation" and "therapeutic deception" of her by Morrow, as those terms are defined by statute. Mathis also alleged that Nexus failed to make inquiries of Morrow's former employer concerning her possible prior sexual exploitation of patients or former patients, and that Nexus knew or had reason to know of Morrow's sexual exploitation of her and failed to report it as required or failed to take necessary action to prevent or stop it. She alleged that Nexus's failure to take such actions was a proximate and actual cause of her damages.

Nexus filed a motion to dismiss because Mathis failed to file an expert report within the deadlines imposed by section 75.351, which applies to health care liability claims.[1] Nexus argued Mathis's suit was for medical malpractice involving the care and services it provided to Mathis from March through June 2005, which Mathis alleged resulted in a relationship with Morrow once Mathis left the Nexus treatment program. The trial court denied Nexus's motion.

Nexus appeals. See id. § 51.014(a)(9) (West 2008); Tex.R.App. P. 26.1(b). In a single issue, it contends the trial court erred by denying its motion to dismiss for failure to comply with section 74.351.

## III. ANALYSIS

### A. Standard of Review

Whether a cause of action is a health care liability claim is a question of law. Dual D Healthcare Operations, Inc. v. Kenyon, 291 S.W.3d 486, 488 (Tex.App.-Dallas 2009, no pet.); see Marks v. St. Luke's Episcopal Hosp., 319 S.W.3d 658, 663 (Tex.2010) (explaining principles of statutory construction).[2] Ordinarily, we review the denial of a motion to dismiss filed pursuant to section 74.351 under an abuse of discretion standard. See Am. Transitional Care Ctrs. of Tex., Inc. v.

1. Section 74.351(a) requires that a claimant bringing a health care liability claim must, not later than the 120th day after filing suit, serve on each party or the party's attorney one or more expert reports for each physician or health care provider against whom a liability claim is being asserted. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a). If a report has not been served by the 120-day deadline, the statute requires that, upon motion by the affected physician or health care provider, the trial court "shall" dismiss the action with prejudice and award reasonable attorney's fees. Id. § 74.351(b). The expert report requirements apply to a patient's claims regardless of whether they are tort claims, as long as the claims fall within the statutory definition of a "health care liability claim." Vanderwerff v. Beathard, 239 S.W.3d 406, 408 (Tex. App.-Dallas 2007, no pet.).

2. The supreme court issued its original opinion in Marks on August 28, 2009, after briefing on this case was filed but before oral argument. In oral argument both parties addressed the impact of that opinion. However, the supreme court granted rehearing in Marks and, on August 27, 2010, withdrew its prior opinion and issued a new opinion. See Marks, 319 S.W.3d at 659-60. Thereafter, we requested additional briefing on the impact of the new Marks opinion on this case.

*Palacios,* 46 S.W.3d 873, 877 (Tex.2001). However, where, as here, the issues involve whether chapter 74 applies to the plaintiff's claims, we apply a de novo standard of review. *See Dual D Healthcare Operations, Inc.,* 291 S.W.3d at 488.

■ To determine whether a cause of action is a health care liability claim we examine the underlying nature of the claim. *Marks,* 319 S.W.3d at 664 (citing *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex.2004)); *Dual D Healthcare Operations, Inc.,* 291 S.W.3d at 489. We focus on the essence of the claim and consider the alleged wrongful conduct and the duties allegedly breached. *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 851 (Tex.2005). When the essence of the suit is a health care liability claim, a party cannot avoid the requirements of the statute through artful pleading. *Garland Cmty. Hosp.,* 156 S.W.3d at 543; *see Yamada v. Friend,* 335 S.W.3d 192, 194–95, 196–97, 197–98 (Tex.2010) (unchallenged holding that claims encompassing physician's safety advice to water park were health care liability claims required dismissal of all claims arising from same facts on theory of improper claim-splitting).

## B. Applicable Law

### 1. Medical Liability—Chapter 74

■ As applicable to this case, a health care liability claim is a cause of action against a health care provider or physician

for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to

health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (West 2005). "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10).[3] "Safety" means "untouched by danger; not exposed to danger; secure from danger, harm or loss." *Diversicare Gen. Partner, Inc.,* 185 S.W.3d at 855 (citation omitted). "Professional or administrative services" means "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(24).

■ Not every cause of action for personal injuries or death arising in a health care setting is a health care liability claim. *See Marks,* 319 S.W.3d at 664. In *Diversicare General Partner, Inc.,* 185 S.W.3d at 846–47, the supreme court considered the definition of "health care liability claim" found in the predecessor statute to chapter 74, the Medical Liability and Insurance Improvement Act ("MLIIA"). *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041 (defining "health care liability claim"; codified at former article 4590i, section 1.03(a)(4) of the Texas Revised Civil Statutes; subsequently amended), *repealed by*

---

**3.** Although "treatment" is not defined in chapter 74, in the medical context it is defined as "the care and management of a patient to combat, ameliorate, or prevent a disease, disorder, or injury." *Tesoro v. Alvarez,* 281 S.W.3d 654, 659 (Tex.App.-Corpus Christi 2009, no pet.) (quoting MOSBY'S MEDICAL DICTIONARY 1880 (8th ed. 2009)).

Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Law 847, 884; *see also Marks*, 319 S.W.3d at 660 n. 1. Even though that definition did not include the phrase "or professional or administrative services directly related to health care" found in section 74.001(a)(13), the supreme court held that a "cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an *inseparable part* of the rendition of medical services." *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 848 (emphasis added).[4]

The supreme court revisited the MLIIA's definition of "health care liability claim" in *Marks*—this time to address the meaning of the statutory phrase "a claimed departure from accepted standards of . . . safety." *See Marks*, 319 S.W.3d at 662–63 (citing former article 4590i, section 1.03(a)(4)). In that case a patient was injured when he fell from an allegedly improperly assembled and maintained hospital bed. *See id.* at 660.

The court observed that a health care liability claim under the MLIIA consists of three elements:

First, a physician or a health care provider must be the defendant. Second, the suit must be about the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care or health care or safety. And, third, the defendant's act, omission, or other departure must proximately cause the patient's injury or death.

*Id.* at 664. In the context of the case before it, the court rephrased the second element as "whether the hospital's alleged failure to provide its patient a safe bed *implicates certain accepted standards* embodied in the definition of a health care liability claim." *Id.* at 662 (emphasis added). The court then summarized its prior analysis in *Diversicare General Partner, Inc.* and applied that same analysis to the "safety" issue before it:

We noted there [that is, in *Diversicare General Partner, Inc.*] that not every accidental injury to a patient in a health care setting would constitute a health care liability claim under article 4590i. . . . We further observed that standards of medical care or health care were implicated when the negligent act or omission was an *inseparable or integral part* of the rendition of medical services. . . . Similarly, an accepted standard of safety is implicated under the MLIIA when the unsafe condition or thing, causing injury to the patient, is an *inseparable or integral part* of the patient's care or treatment.

*Id.* at 664 (citations omitted, emphasis added). The supreme court then concluded:

Whether the underlying claim involves a health care provider's negligent act or omission, or the patient's exposure to some other safety risk, *the relationship between the injury[-]causing event and the patient's care or treatment must be substantial and direct* for the cause of action to be a health care liability claim under the MLIIA. . . .

*Id.* (citation omitted, emphasis added).

We conclude this language, written in the context of the MLIIA, is equally applicable to chapter 74.[5] Apply-

---

**4.** The court also noted that the necessity of expert testimony from a medical or health care professional may be an important factor in determining whether a cause of action is an inseparable part of the rendition of medi-

cal or health care services. *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 848.

**5.** As noted earlier, *Diversicare General Partner, Inc.* and *Marks* addressed the MLIIA's definition of a "health care liability claim"—

ing the analytical framework underlying the discussion in *Marks*, a health care liability claim under chapter 74 consists of three elements. *Id.* at 662. First, the defendant must be a physician or a health care provider. Second, the claim must be about the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care. And, third, the defendant's act, omission, or other departure must proximately cause the patient's injury or death. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13). Further, to satisfy the second element, there must be a substantial and direct relationship between the alleged injury-causing event—a negligent act or omission or the patient's exposure to some other risk of harm—and the patient's care or treatment. *See Marks,* 319 S.W.3d at 664. Such a substantial and direct relationship exists if the complained-of act, omission, or unsafe condition or thing is an inseparable or integral part of the patient's medical care or health care. *See id.*

### 2. Sexual Exploitation—Chapter 81

which differs somewhat from that now set forth in chapter 74. Specifically and as relevant here, the legislature modified the statutory definition of health care liability claims to encompass causes of action "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care...." *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13). However, this change in the statutory definition reinforces our conclusion as to the necessity of a "substantial and direct relationship" between the injury-causing event and the patient's care or treatment.

6. Thus, we do not address Nexus's argument that Morrow does not come within the statutory definition of a mental health services provider. *See* Tex. Civ. Prac. & Rem.Code Ann. § 81.001(2). This argument goes to whether

We do not address the viability of Mathis's causes of action against Nexus under chapter 81.[6] However, an understanding of that chapter is helpful in analyzing whether Mathis's causes of action fall within the definition of a health care liability claim under chapter 74.

Chapter 81 creates a cause of action in favor of a patient or former patient against a mental health services provider for:

damages for sexual exploitation if the patient or former patient suffers, directly or indirectly, a physical, mental, or emotional injury caused by, resulting from, or arising out of:

(1) sexual contact between the patient or former patient and the mental health services provider;

(2) sexual exploitation of the patient or former patient by the mental health services provider; or

(3) therapeutic deception of the patient or former patient by the mental health services provider.

Tex. Civ. Prac. & Rem.Code Ann. § 81.002. Other provisions of chapter 81 define the terms "sexual contact," "sexual exploitation," and "therapeutic deception."[7]

Mathis can prevail on her causes of action against Nexus, a matter not relevant to this interlocutory appeal.

7. "Sexual contact" means: "deviate sexual intercourse," "sexual contact," or "sexual intercourse" each as defined by section 21.01 of the penal code. Tex. Civ. Prac. & Rem.Code Ann. § 81.001(4)(A), (B), (C). It also means "requests by the mental health services provider for conduct described by Paragraph (A), (B), or (C). 'Sexual contact' does not include conduct described by Paragraph (A) or (B) that is part of a professionally recognized medical treatment of a patient." *Id.* § 81.001(4)(D).

"Sexual exploitation" means:
a pattern, practice, or scheme of conduct, which may include sexual contact, that can reasonably be construed as being for the purposes of sexual arousal or gratification or sexual abuse of any person. The term

Chapter 81 also provides that the employer of a mental health services provider is liable if a patient or former patient "is injured as described by section 81.002" and the employer:

> (1) fails to make inquiries of an employer or former employer, whose name and address have been disclosed to the employer and who employed the mental health services provider as a mental health services provider within the five years before the date of disclosure, concerning the possible occurrence of sexual exploitation by the mental health services provider of patients or former patients of the mental health services provider; or
>
> (2) knows or has reason to know that the mental health services provider engaged in the sexual exploitation of the patient or former patient and the employer failed to:
>
> (A) report the suspected sexual exploitation as required by Section 81.006; or
>
> (B) take necessary action to prevent or stop the sexual exploitation by the mental health services provider.

*Id.* § 81.003(a). The employer or former employer is liable "only to the extent that the failure to take the action described by Subsection (a) . . . was a proximate and actual cause of damages sustained." *Id.* § 81.003(c).

## C. Discussion

For purposes of this appeal, it is undisputed that Nexus is a health care provider within the meaning of chapter 74. *See id.* § 74.001(a)(11), (12)(A). Thus Mathis's causes of action meet the first element of a health care liability claim. There is also no dispute—for purposes of this appeal—as to the third, or proximate cause, element of her causes of action. *See id.* § 74.001(a)(13). As to the second element, it is undisputed that Morrow and Nexus are not physicians. And we do not read Mathis's petition as asserting causes of action against Nexus for a "claimed departure from accepted standards of *medical care.*" *Id.* (emphasis added); *see id.* § 74.001(a)(19) (defining "medical care" as the practice of medicine, including diagnosis and treatment by a licensed physician).

Thus, the issue before us is whether Mathis's causes of action against Nexus are for claimed departures from accepted standards of either: (1) "health care"; or (2) "safety or professional or administrative services directly related to health care." *See id.* § 74.001(a)(13). We examine the underlying nature of the plaintiff's claims, *see Marks,* 319 S.W.3d at 664, including the alleged wrongful conduct and the duties allegedly breached, *see Diversicare Gen. Partner, Inc.,* 185 S.W.3d at 851, to determine whether there is a substantial and direct relationship between the alleged injury-causing event—a negligent act or omission or the patient's exposure to some other risk of harm—and the patient's care or treatment. *See Marks,* 319 S.W.3d at 664. Such a substantial and direct relationship exists if the complained-of act, omission, or unsafe condition or thing is an inseparable or integral part of the patient's medical care or health care. *See id.*

### 1. Morrow's Alleged Actions

██ Mathis's causes of action are based on allegations of wrongful conduct—

---

does not include obtaining information about a patient's sexual history within standard accepted practice while treating a sexual or marital dysfunction.
*Id.* § 81.001(5).

"Therapeutic deception" means "a representation by a mental health services provider that sexual contact with, or sexual exploitation by, the mental health services provider is consistent with, or a part of, a patient's or former patient's treatment." *Id.* § 81.001(6).

actually, wrongful omissions—on Nexus's part.[8] However, the first element of each of Mathis's causes of action against Nexus is that she was injured (by Morrow) "as described by Section 81.002...." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 81.003(a). Thus, Morrow's alleged conduct is relevant to whether those causes of action are health care liability claims.

Mathis does not allege Morrow failed to provide appropriate mental health care services during her confinement at Nexus, or that the mental health care services she provided were rendered incompetently. She does not allege Morrow injured her while she was receiving treatment at Nexus or that she was injured by any act that took place while she was receiving treatment there. In fact, she does not complain of Morrow's conduct during her care and treatment at Nexus at all.

Rather, Mathis alleges that some months after she was no longer a patient at Nexus, Morrow engaged in sexual contact, sexual exploitation, and therapeutic deception, as those terms are defined by statute,[9] proximately causing damages to Mathis. It is undisputed these actions—which constitute the first element of Mathis's causes of action against Nexus—are alleged to have taken place well after Mathis left Nexus's care and was no longer a patient, and they occurred at locations other than Nexus's resident treatment facility.

Mathis's allegations concerning Morrow's alleged actions "relate" to Mathis's health care only in the sense that Mathis and Morrow first met when Mathis was a patient at Nexus. They are not about her treatment, lack of treatment, or some other departure from accepted standards of "health care." *See id.* § 74.001(a)(13). Indeed, Morrow's alleged actions do not concern Mathis's health care at all—that is, they are not about "any act or treatment performed or furnished, or that should have been performed or furnished, by [Morrow] during [Mathis's] medical care, treatment, or confinement." *See id.* § 74.001(a)(10) (defining "health care").

We also conclude Mathis's allegations as to Morrow are not about a claimed "departure from accepted standards of ... safety or professional or administrative services *directly related* to health care." *See id.* § 74.001(a)(13) (emphasis added); *see also id.* § 74.001(a)(10). We agree the relevant standards of conduct under section 81.002 regulate the relationship between a mental health care provider and a patient both during and after the patient's treatment. Again, however, Morrow's alleged actions took place well after Mathis was no longer Morrow's—or Nexus's—patient and at locations other than Nexus's premises. Thus the "standards of safety or professional or administrative services" set forth in section 81.002—from which Morrow allegedly deviated by her post-treatment relationship with Mathis—do not directly relate to Mathis's health care.

Our conclusions are bolstered by the fact that expert testimony from a medical or health care professional is unnecessary to determine the propriety of Morrow's actions. *See Diversicare Gen. Partner, Inc.,* 185 S.W.3d at 848 (necessity of expert testimony may be a factor in determining

8. In other words, Mathis is not seeking to hold Nexus responsible for Morrow's actions on the basis of respondeat superior. *See Diversicare Gen. Partner, Inc.,* 185 S.W.3d at 851 ("Rubio's claim is *not* that Diversicare, through its employees and agents, committed the sexual assault.").

9. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 81.001(4), (5), (6); *see also* TEX. PENAL CODE ANN. § 21.01 (West Supp. 2010).

whether cause of action is an inseparable part of the rendition of medical or health care services).[10] The source, definition, and applicability of the standards allegedly violated by Morrow—set forth in section 81.002—exist as a result of the statute, and do not depend on whether they are "accepted" within the medical or health care community. No professional judgment or expertise is implicated in defining those standards or in determining whether those standards were, in fact, met. Those standards do not vary according to the medical conditions of the patient or according to professional judgment, and no specialized training or knowledge is necessary to understand them.

In summary, there is not a "substantial and direct relationship" between Morrow's alleged actions—the acts, omissions, or unsafe conditions or things that are the gravamen of Mathis's causes of action against Nexus (or at least of the first element of those causes of action)—and Mathis's care or treatment. Certainly they do not constitute an "inseparable or integral part" of Mathis's health care. *See Marks*, 319 S.W.3d at 664. Morrow's alleged conduct is not directly related to Mathis's care and treatment. As a result, Mathis's allegations concerning Morrow's conduct do not—of their own accord—render her claims against Nexus "health care liability claims" under chapter 74. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13).

### 2. Nexus's Alleged Conduct

■ We now turn to whether the second element of Mathis's causes of action against Nexus, that is, Nexus's own actions, renders those causes of action health care liability claims.

### (a) Failure to Inquire

Again, Mathis does not complain of the care and treatment she received while a patient, nor does she allege any injuries resulting from her health care. Instead, she first alleges that Nexus failed to make inquiries of Morrow's former employer(s) concerning possible occurrences of sexual exploitation by Morrow of patients or former patients, and thus failed to comply with section 81.003(a)(1). *See id.* § 81.003(a)(1). This alleged conduct does not concern any "act or treatment performed or furnished, or that should have been performed or furnished, by [Nexus] for, to, or on behalf of [Mathis] during [Mathis's] medical care, treatment, or confinement." *Id.* at § 74.001(a)(10) (defining "health care"). Thus, her claim is not about her treatment, lack of treatment, or some other departure from accepted standards of "health care." *See id.* § 74.001(a)(13). For the same reasons, we also conclude Mathis's "failure to inquire" allegations as to Nexus are not about a claimed "departure from accepted standards of . . . *safety* or professional or administrative services *directly related* to health care." *See id.* (emphasis added). Rather, Nexus's alleged acts here involve conduct incidental to its general administrative and personnel activities. Those acts may be "related" to Mathis's care or treatment, but they do not constitute or implicate an "inseparable or integral part" of that care or treatment. *See Marks*, 319 S.W.3d at 664.

Again, our conclusions are bolstered by the fact that expert testimony from a medical or health care professional is unnecessary to determine the propriety of Nexus's

---

10. We do not consider this factor to be outcome-determinative in nature. However, its discussion here further illuminates why the essence of Mathis's allegations concerning Morrow do not implicate medical or health care judgments made by professionals. *See Marks*, 319 S.W.3d at 663 (discussing MLIIA).

actions. *See Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 848. As we noted previously with respect to Morrow's alleged conduct, no professional judgment or expertise is involved in defining the standards applicable to Nexus's conduct or in determining whether those standards were, in fact, met. Those standards—set forth in section 81.003(a)—do not vary according to the medical conditions of the patient or according to professional judgment. No medical or health care expertise or training is necessary to understand what that statute requires or whether Nexus complied with it. *See id.* And there is nothing that requires any such inquiry to be made by a health care professional. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10). The evidence relevant to whether Nexus complied with the statutory standard is understandable by lay factfinders. Their "general experience and common sense" are sufficient to allow them to evaluate the evidence and determine whether Nexus breached the statute. *See Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex.2007). In addition, no specialized or expert knowledge is required to prove causation or disability. Thus, the essence of Mathis's "failure to inquire" allegations concerning Nexus do not implicate medical or health care judgments made by professionals. *See Marks*, 319 S.W.3d at 663 (discussing MLIIA).

We conclude the complained-of act, omission, or unsafe condition or thing that is the subject of Mathis's first cause of action against Nexus—Nexus's alleged failure to inquire about Morrow—is not an inseparable or integral part of Mathis's medical care or health care. *See id.* at 664. There is not a substantial and direct relationship between Nexus's alleged failure to inquire of Morrow's former employer(s) and Mathis's care or treatment. *See id.* Thus, Nexus's alleged conduct that is the gravamen of her first cause of action against Nexus does not implicate accepted standards of "health care" or of "safety or professional or administrative services *directly related* to health care...." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (emphasis added).[11]

(b) Failure to Report/Prevent/Stop

■ We now turn to Mathis's second cause of action against Nexus. There she complains that Nexus knew or had reason to know of Morrow's alleged sexual exploitation of her, but failed to report it as required and to take necessary action to prevent or stop it. Again, it is undisputed that Morrow's alleged sexual exploitation giving rise to Mathis's damages did not begin until several months after Mathis was no longer receiving health care from or at Nexus. Thus, any actual or imputed knowledge on Nexus's part—and thus any concomitant obligation to report, prevent, or stop Morrow—did not begin until several months after Mathis was no longer Nexus's patient.

For the same reasons set forth above with respect to Mathis's "failure to inquire" cause of action, we conclude that Nexus's alleged conduct giving rise to Mathis's "failure to report/prevent/stop" cause of action does not concern "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10) (defining "health care").[12]

11. And for the reasons set forth earlier, considering Mathis's allegations as to Morrow does not avail to turn Mathis's "failure to inquire" cause of action against Nexus into a health care liability claim.

12. Again, our conclusions are bolstered by the fact that expert testimony from a medical or

We conclude the complained-of act, omission, or unsafe condition or thing that is the subject of Mathis's second cause of action against Nexus—Nexus's alleged "failure to report/prevent/stop" Morrow's sexual exploitation of Mathis—is not an inseparable or integral part of Mathis's medical care or health care. *See Marks,* 319 S.W.3d at 664. There is not a substantial and direct relationship between Nexus's alleged conduct and Mathis's care or treatment. *See id.* Thus, Nexus's alleged conduct that is the gravamen of her second cause of action against Nexus does not implicate accepted standards of "health care" or of "safety or professional or administrative services *directly related* to health care...." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added).[13]

## D. Patient Assault Cases

In support of its position that Mathis's claims are health care liability claims, Nexus relies on *NCED Mental Health, Inc. v. Kidd,* 214 S.W.3d 28 (Tex.App.-El Paso 2006, no pet.). There, the plaintiff alleged that while she was a resident patient at NCED's facility and heavily sedated, she was sexually assaulted numerous times by a mental health technician on NCED's staff. *Id.* at 31. In addition to other claims,[14] the plaintiff asserted a cause of action against NCED for sexual exploitation under chapter 81. *Id.* at 32. Specifically, the plaintiff alleged that NCED failed to prevent or stop the sexual exploitation (for which it could be liable under section 81.003(a)(2)(B)) and failed to properly report the sexual exploitation as required by section 81.006 (for which it could be liable under section 81.003(a)(2)(A)).[15] The El Paso Court of Appeals concluded this cause of action was a health care liability claim because

> it is based on a claimed departure from an accepted standard of professional or administrative services, that is, NCED's duty to protect Kidd's right to receive care in a safe setting and to be free from all forms of abuse or harassment, and its duty to report the sexual exploitation committed by [the mental health technician].

*Id.* at 36.[16]

However, the sexual misconduct in *NCED Mental Health, Inc.* took place

---

health care professional is unnecessary to determine the propriety of Nexus's actions. *See Diversicare Gen. Partner, Inc.,* 185 S.W.3d at 848. We have addressed this factor above in the context of Mathis's "failure to inquire" cause of action, and there is no need to repeat that analysis here.

13. And again, considering Mathis's allegations as to Morrow does not avail to turn Mathis's "failure to report/prevent/stop" cause of action against Nexus into a health care liability claim.

14. The plaintiff also asserted causes of action for negligence, gross negligence, negligent hiring, sexual assault (based on vicarious liability), and premises liability. *NCED Mental Health, Inc.,* 214 S.W.3d at 31–32.

15. Unlike Mathis, the plaintiff in *NCED Mental Health, Inc.* did not allege a "failure to inquire" cause of action, asserting liability under section 81.003(a)(1).

16. The court took several steps to reach this conclusion. First, it noted chapter 74 defined professional or administrative services as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *NCED Mental Health, Inc.,* 214 S.W.3d at 36; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(24). It then referenced several federal and state regulations applicable to NCED, which it summarized as requiring NCED to protect the patient's rights to receive care in a safe setting and "be free from all forms of abuse or harassment," and requiring NCED—upon threat of the denial, suspension, or revocation

solely on the health care provider's premises. That fact—as well as the facts that the plaintiff there was sexually assaulted while she was NCED's patient and under heavy sedation (presumably as a part of her treatment and as prescribed by a physician in the exercise of the physician's professional judgment)—are rather significant distinctions from the facts before us. They are significant because, to use the language from the supreme court's subsequent opinion in *Marks*, they support the conclusion that the complained-of acts, omissions, or unsafe conditions or things— the technician's sexual assaults of a sedated patient and NCED's failure to stop, prevent, or properly report the technician's actions—were inseparable or integral parts of the patient's care or treatment. *See Marks*, 319 S.W.3d at 664. Thus, in *NCED Mental Health, Inc.*, as in *Marks*, there was a substantial and direct relationship between the alleged injury-causing events and the patient's care or treatment. *See id.* That is not the situation here, where the alleged sexual exploitation did not occur until well after Mathis was discharged as Nexus's patient and was not a resident at Nexus's facility. Different facts—and different allegations—lead to different results. Thus, we are not persuaded to a different conclusion by Nexus's arguments based on *NCED Mental Health, Inc.*

In support of its argument that Mathis's claims are health care liability claims, Nexus also cites to other cases involving alleged physical assaults concerning a patient. In all of those cases, the assault took place while the plaintiff was either a patient of the health care provider or injured by a patient under the care of the health care provider and at the health care provider's facility.[17] Thus in each of those cases, the "dispute between the parties is, at its core, over the *appropriate standard of care* owed to [the patient]; what services, supervision, and monitoring were *necessary* to satisfy the standard; and whether such specialized standards were breached." *See Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 850 (emphasis added). Those are not the alleged facts here, and the core disputes here differ from those set forth in *Diversicare General Partner, Inc.*

### E. Recasting Claims

Nexus argues that, by asserting liability under chapter 81 instead of under negligence theories, Mathis has improperly re-pleaded her claim in an effort to avoid chapter 74, the medical liability statute. Specifically, Nexus argues that Mathis merely recast her original claims as alleged violations of chapter 81, but the gravamen of her claims is that Nexus failed properly to hire, train, supervise, and retain Morrow, failed to provide Mathis with

of its license—to report incidents of patient abuse to the Department of State Health Services. *NCED Mental Health, Inc.*, 214 S.W.3d at 36.

17.  *See, e.g., Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 845 (nursing home resident asserted causes of action arising from her alleged sexual assault by another resident); *Wilson N. Jones Mem'l Hosp. v. Ammons*, 266 S.W.3d 51, 53–54 (Tex.App.-Dallas 2008, pet. denied) (claimant's alleged injuries sustained in hospital hallway when kicked by violent psychiatric patient being subdued by security guard); *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 351 (Tex.App.-San Antonio 2008, no pet.) (claimant's injuries sustained as hospital patient when sexually assaulted by hospital nurse while under sedation); *Sw. Mental Health Ctr. v. Olivo*, No. 04–06–00256–CV, 2006 WL 2682245, at *1 (Tex.App.-San Antonio Sept. 20, 2006, no pet.) (mem. op., not designated for publication)(claimant, while a patient, was touched inappropriately by health center employee).

a safe environment, and failed to protect her generally. Nexus argues that the care and service it provides to patients, including Mathis, cannot be accomplished without necessary chemical dependency counseling staff, and thus "the two are inseparable."

A party cannot avoid the requirements of the statute through artful pleading. *Yamada,* 335 S.W.3d at 195–96; *Garland Cmty. Hosp.,* 156 S.W.3d at 543. Thus, changes in the theories of recovery alleged will not avoid the scope of the medical liability statute if it is applicable. Mathis did amend her pleadings to change the theories of liability she asserted. However, she did not materially change the factual allegations underlying her causes of action.

As discussed above, our conclusion is based on the application of chapter 74 to the alleged wrongful conduct and the duties allegedly breached, independent of the specific theories of liability Mathis asserted. *See Dual D Healthcare Operations, Inc.,* 291 S.W.3d at 489. We have examined, at length and in detail, the nature of the relationship between Mathis's health care and the actions and omissions that are the subject of her complaints. As set forth above, we have concluded that there is not a substantial and direct relationship between those acts and omissions and Mathis's care and treatment. They do not constitute inseparable or integral parts of Mathis's health care. *See Marks,* 319 S.W.3d at 664.

For the same reason, Nexus's observation as to the inseparability of its health care and its staff—although axiomatic—is off-target. Although Nexus is a health care provider, not all of its actions or omissions constitute inseparable or integral parts of the health care it provides its patients. *See id.*

## IV. CONCLUSION

For the reasons set forth above, we conclude Mathis's causes of action against Nexus are not health care liability claims, and thus are not subject to the expert report requirements of section 74.351. We conclude the trial court did not err in denying Nexus's motion to dismiss. We resolve Nexus's sole issue against it and affirm the trial court's order.