TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00334-CV






Chauncey Drewery, Appellant


v.


Adventist Health System/Texas, Inc.; Metroplex Health System d/b/a Metroplex Hospital;
Barbara Wiedebusch, R.N.; Kristien Williams, R.N.; Betty S. Thorp, R.N.; and
Warren Voegele, Appellees






FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 235,885-C, HONORABLE RICK MORRIS, JUDGE PRESIDING




O P I N I O N




 Appellant Chauncey Drewery filed suit against appellees Barbara Wiedebusch, R.N.,
and Kristien Williams, R.N., alleging causes of action for assault and intentional infliction of
emotional distress. He alleged the same causes of action against Wiedebusch and Williams'
colleagues, appellees Betty S. Thorp, R.N., and Warren Voegele, under a theory of "aider and
encourager" liability, and against their employer, Adventist Health System/Texas, Inc. and Metroplex
Health System d/b/a Metroplex Hospital (collectively, "the Hospital") under a theory of vicarious
liability. All defendants filed motions to dismiss Drewery's claims against them under chapter 74
of the civil practice and remedies code, asserting that they were health care liability claims in support
of which Drewery had failed to file a medical expert report. The trial court granted the defendants'
motions and dismissed all of Drewery's claims with prejudice. Drewery appeals, arguing that the
trial court erred in characterizing his assault and intentional infliction of emotional distress claims
as health care liability claims subject to the expert-report requirement. We will reverse the trial
court's order and remand the cause for further proceedings.


FACTUAL AND PROCEDURAL BACKGROUND

 Drewery, who was employed by the Hospital as a surgical technician, was admitted
as a patient at the Hospital to undergo a tonsillectomy. Registered nurses Barbara Wiedebusch and
Kristien Williams, who were at the time Drewery's coworkers, were assigned to assist at his surgery. 
In preparation for the procedure, Drewery received general anesthesia. According to Drewery's
pleadings, at some time "during pre-surgery preparation and during surgery," Wiedebusch and
Williams intentionally assaulted him by (1) painting his fingernails and toenails with pink nail
polish, (2) defacing his body by writing "Barb was here" and "Kris was here" on the bottoms of his
feet, and (3) wrapping his thumb with tape. Only later, of course, did Drewery learn of these actions.

 In addition to the assault claim, Drewery alleged causes of action against Wiedebusch
and Williams for intentional infliction of emotional distress, claiming that the incident and its
aftermath created a hostile work environment that caused him severe emotional distress. He asserted
that when he returned to work after the surgery, the individual defendants continued to tease him and
make jokes about his sexuality, telling other hospital employees that he is gay, even though he is not,
and that they had painted him to look "like a little girl." Regarding the taping of his thumb, Drewery
argued that the significance of this act was to call attention to his "very private, but embarrassing
habit" of sucking his thumb, which Wiedebusch was aware of and had exploited in an attempt to
humiliate him. He alleged that he experienced nausea and loss of sleep and appetite as a result of
feeling that he had been violated by his coworkers and from not knowing what else might have been
done to him while he was under anesthesia. According to his pleadings, Drewery suffered further
emotional distress after administrative personnel at the Hospital ignored his complaints regarding
the assault, failed to acknowledge any wrongdoing, and failed to punish the perpetrators.

 Drewery brought the same causes of action for assault and intentional infliction of
emotional distress against Betty Thorp, a surgical technician, and Warren Voegele, a nurse
anesthetist, claiming that both of them had been present in the operating room before and during his
surgery, yet neither of them had intervened to stop the assault; in fact, Drewery alleged, Thorp and
Voegele had aided and encouraged Wiedebusch and Williams by joking and laughing. Drewery also
brought these claims against the Hospital under the doctrine of respondeat superior, arguing that the
individual defendants had been acting in the course and scope of their employment. (1)

 Based on the foregoing allegations, Drewery sought damages for mental anguish and
emotional distress, humiliation, embarrassment, damage to his reputation, loss of enjoyment of life,
and court costs. He also sought exemplary damages, arguing that the acts against him had been
committed with malice and that the Hospital had authorized, ratified, and approved the assaultive
conduct of its employees. (2)

 Drewery filed his original petition on April 27, 2009. Thereafter, the defendants filed
motions to dismiss in which they argued that Drewery's claims related to the provision of health care
and were, therefore, health care liability claims subject to the mandatory expert-report requirement
in chapter 74 of the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a) (West Supp. 2010) ("In a health care liability claim, a claimant shall, not later than the
120th day after the date the original petition was filed, serve on each party or the party's attorney one
or more expert reports, with a curriculum vitae of each expert listed in the report for each physician
or health care provider against whom a liability claim is asserted."); see also id. § 74.351(b)(2) ("If,
as to a defendant physician or health care provider, an expert report has not been served within the
period specified by Subsection (a), the court, on the motion of the affected physician or health care
provider" shall enter an order that "dismisses the claim with respect to the physician or health care
provider, with prejudice to the refiling of the claim."). It is undisputed that Drewery did not serve
any defendant with an expert report.

 On March 18, 2010, after the defendants' motions to dismiss had been filed but before
the March 26, 2010 hearing on the motions, Drewery filed his first amended petition. In it, he
asserted the same claims and theories of liability, but deleted references that had appeared in his
original petition to medical risks that the individual defendants' conduct had posed to him as a
surgical patient. (3) He also responded to the defendants' assertions that his claims were health-care
liability claims subject to the expert-report requirement in chapter 74. After the hearing, the sitting
judge recused himself sua sponte, and the case was reassigned to a different judge. Following
rehearing of the motions to dismiss on May 14, 2010, the trial court granted the defendants' motions
and dismissed all of Drewery's claims with prejudice. This appeal followed.


DISCUSSION

 The issue in this case is whether the trial court properly characterized Drewery's
claims as health care liability claims. Only health care liability claims are subject to the expert-report
requirement in section 74.351 of the civil practice and remedies code. See id. § 74.351(a). A health
care liability claim is defined as a claim "against a health care provider or physician for treatment,
lack of treatment, or other claimed departure from accepted standards of medical care, or health care,
or safety or professional or administrative services directly related to health care, which proximately
results in injury to or death of a claimant." Id. § 74.001(a)(13). Under this definition, the Texas
Supreme Court has explained, a health care liability claims consists of three elements: (1) a
physician or health care provider must be the defendant; (2) the suit must be about the patient's
treatment, lack of treatment, or some other departure from accepted standards of medical care or
health care or safety; and (3) the defendant's act, omission, or other departure must proximately
cause the patient's injury or death. Marks v. St. Luke's Episcopal Hosp., 319 S.W.3d 658, 662 (Tex.
2010) (plurality op.).

 In determining whether a claim is a health care liability claim, a question of law that
we review de novo, we look to the nature and essence of the claim, rather than the way it was
pleaded. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 847 (Tex. 2005); see Marks,
319 S.W.3d at 663 (explaining principles of statutory construction). When the essence of the suit
is a health care liability claim, a party cannot avoid the requirements of the statute through artful
pleading. Yamada v. Friend, No. 08-0262, 2010 WL 5135334, at *3 (Tex. Dec. 17, 2010); Garland
Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2004). In a case where "the gravamen or essence"
of the cause of action is a health care liability claim, the Texas Supreme Court has warned that
"allowing the claim to be split or spliced into a multitude of other causes of action with differing
standards of care, damages, and procedures would contravene the Legislature's explicit
requirements." Yamada, 2010 WL 5135334, at *5; see also Diversicare Gen. Partner, 185 S.W.3d
at 854 (holding claimant could not allege premises-liability claim independent of health care liability
claim). The defendants thus asserted that Drewery's claims were actually health care liability claims
recast as intentional torts.

 A claim is a health care liability claim if it implicates standards of medical care by
alleging a negligent act or omission that is "an inseparable or integral part of the rendition of medical
services." Marks, 319 S.W.3d at 664 (plurality op.); see Diversicare Gen. Partner, 185 S.W.3d at
848-49. In determining whether a claim is inseparable from the rendition of medical care, we
consider factors such as whether a specialized standard in the health care community applies to the
alleged circumstances and whether the alleged negligent act involves medical judgment related to
the patient's care or treatment. See Diversicare, 185 S.W.3d at 847-52. The necessity of expert
testimony from a medical professional to prove a cause of action may also be an important factor in
determining whether a cause of action is an inseparable part of the rendition of medical services. 
Id. at 851.

 In both their motions to dismiss and their briefs to this Court, the appellees relied on
a statement from Drewery's original petition that the painting of his fingernails posed a risk to him
as a surgical patient because "it could have" prevented the doctors and surgical staff from detecting
whether he had developed cyanosis (a discoloration of the skin and mucous membrane due to
deficient oxygenation of the blood). Based on this statement, which was deleted from his live
petition, the appellees assert that the true nature of Drewery's suit is a health care liability claim
based on the individual defendants' departures from accepted standards of health care when they
were supposed to be preparing him for and monitoring him during surgery. Besides addressing this
superseded allegation, the defendants otherwise generally assert that the actions identified in
Drewery's petition "were done while [Defendants were] providing health care to Plaintiff as a health
care provider [sic], and were clearly an inseparable part of Defendants' rendition of health care
services to him." They do not respond, however, to other facts alleged in Drewery's petition
regarding the writing on his feet and taping of his thumb, nor to any of the events reportedly
occurring after he returned to work that formed the basis of his claims for intentional infliction of
emotional distress.

 On appeal, Drewery argues that neither his assault nor his intentional infliction of
emotional distress claims are health care liability claims. We agree that neither of these claims, as
pleaded in either his original petition or his amended petition, are health care liability claims. 
Specifically, neither cause of action (1) required expert testimony, (2) implicated any community
standards of care, (3) involved hiring, training, supervision, or any other independent act on the part
of the Hospital, or (4) related to a medical or health care procedure. Indeed, many of the factual
allegations asserted in his petition did not even take place while he was a patient under the
defendants' care, but occurred after the fact in the context of workplace discrimination. Even those
allegations that concern the conduct of health care providers before and during the surgery, however,
do not address any negligent acts or omissions related to his care. Therefore, Drewery's claims do
not satisfy the second prong of the Marks test because they do not concern his treatment, lack of
treatment, or some other departure from accepted standards of medical care or health care or safety. (4)

 In arguing the contrary, the defendants urge that we must consider allegations
contained in Drewery's original petition. Their position contradicts the general rule that, once a
plaintiff properly amends his petition, the factual allegations contained therein are superseded and
are no longer part of the pleading on record. See Tex. R. Civ. P. 65; see FKM P'ship, Ltd. v. Board
of Regents of Univ. of Houston Sys., 255 S.W.3d 610, 633 (Tex. 2008) (noting that because our rules
provide that amended pleadings and their contents take place of prior pleadings, "causes of action
not contained in amended pleadings are effectively dismissed at the time the pleading is filed"). 
They provide no argument or authority suggesting why this rule should be abandoned here.

 Even considering Drewery's original petition in analyzing his pleadings, however,
we would still conclude that he has not alleged health care liability claims. Of paramount
importance is the fact that Drewery did not plead damages based on any physical injury resulting
from a defendant's provision of medical treatment, lack of treatment, or other departure, as required
by the third element of the Marks test. He did not allege that he was physically harmed by the
painting of his fingernails, nor that he actually developed cyanosis, which would have been detected
but for the defendants' conduct. Nor has he pleaded any emotional or psychological injury that he
suffered as a result of the provision of medical treatment, lack of treatment, or other departure from
accepted standards of medical or health care or safety (e.g., that he suffered emotional distress from
knowing he could have developed cyanosis and it might not have been discovered). On the contrary,
Drewery is not attempting to recover for the medical negligence of any defendant; the only damages
he has sought and the only damages that are supported by his pleadings relate to the intentional torts
that he has alleged.

 Moreover, the same facts that Drewery alleged in his original petition form the basis
of the claims he asserted in his amended petition. In amending his petition, Drewery did not delete
any facts--only the legal conclusions that he had drawn from those facts. Drewery's initial decision
to identify a potentially harmful consequence of the tortious conduct alleged in his petition in order
to bolster his chances of recovering punitive damages does not control our analysis of whether the
conduct itself constitutes a health care liability claim. Indeed, one can imagine that any intentional
tort committed against a patient during a medical procedure or in a health-care setting might have
consequences that could in some way implicate medical negligence. If, for example, a nurse were
to repeatedly stab a surgical patient with a scalpel when he or she was supposed to be monitoring the
patient's blood pressure, one could reasonably argue that the nurse's conduct increased the likelihood
that the patient's blood pressure would drop to dangerously low levels, thereby implicating the duty
of care owed by a nurse during a surgical procedure. But if the essence of the plaintiff's suit--and
the injury for which he seeks damages--is the intentional assault, the reviewing court would be
wrong to ignore the intentional conduct and instead focus on the potentially infinite secondary
consequences that might also have resulted in the context of the medical or health-care procedure.

 Drewery's claims are not health care liability claims impermissibly "recast" as
intentional torts. The gravamen of his suit is that he suffered humiliation as a result of the
intentional physical violation of his body by his co-workers while he was unconscious, and that he
continued to feel extreme embarrassment after the assault because of negative impact on his work
environment. Although these events took place in a hospital, Texas courts have consistently
recognized that not every cause of action for injuries arising in a health care setting is a health care
liability claim--even in cases where the defendant was alleged to have been acting in the course of
his employment. See Nexus Recovery Ctr., Inc. v. Mathis, No. 05-09-00273-CV, 2011 WL 454504,
at *3, 6 (Tex. App.--Dallas Feb. 10, 2011, no pet. h.) (sexual exploitation and therapeutic deception
claims against mental health services facility by former patient were not health care liability claims,
even though relationship between claimant and counselor arose as result of claimant receiving
counseling services at facility) (citing Marks, 319 S.W.3d at 664); see also Appell v. Muguerza,
329 S.W.3d 104, 111-16(Tex. App.--Houston [14th Dist.] Nov. 23, 2010, pet. filed) (patient's claim
that doctor attacked her and her mother during medical examination was not health care liability
claim because alleged conduct was not inseparable part of rendition of medical services, nor was it
based on departure from accepted standard of safety); Wasserman v. Gugel, No. 14-09-00450-CV,
2010 WL 1992622, at *3 (Tex. App.--Houston [14th Dist.] May 20 2010, pet. granted) (op. on
reh'g) (patient's claim that doctor sexually assaulted her during surgical consult was not health care
liability claim, as it would "defy logic to suggest that a sexual assault [such as that alleged by Gugel],
is an inseparable part of the rendition of medical care or a departure from accepted standards of
health care" (quoting Holguin v. Laredo Reg'l Med. Ctr., L.P., 256 S.W.3d 349, 353 (Tex.
App.--San Antonio 2008, no pet.) (holding same)); Jones v. Khorsandi, 148 S.W.3d 201, 206 (Tex.
App.--Eastland 2004, pet. denied) (patient's claims for assault, battery, and intentional infliction
of emotional distress based on doctor's "unwanted and offensive sexual advances" were not health
care liability claims because they did not involve breach of applicable standards of care and were not
inseparable part of rendition of medical services). In this case, as in the cases cited, the conduct at
issue is not an "inseparable or integral part" of the defendants' rendition of medical or health care
services even though some of the acts in question took place immediately before, or even during, a
medical procedure and were performed by medical and health-care personnel.

 The defendants' attempt to analogize the present case to Vanderwerff, D.C.
v. Beathard, 239 S.W.3d 406 (Tex. App.--Dallas 2007, no pet.), is unpersuasive. In Vanderwerff,
the plaintiff alleged that she was assaulted during a chiropractic examination when the defendant
doctor "rubbed her genitals." The Dallas Court of Appeals concluded that her pleadings, which
stated that she was seeking treatment for pain in an area running from her knee to her upper thigh,
raised questions that could not be answered without reference to the standard of care required of a
chiropractic provider. Id. at 409. In the present case, however, no reasonable argument could be
made that the nurses' alleged conduct--which included painting Drewery's nails and writing their
names on his feet--was a necessary part of preparing him for surgery to remove his tonsils.

 The focus of the factual allegations in Drewery's petition is an alleged assault based
on offensive contact while he was under general anesthesia before or during a surgical procedure. 
This type of civil assault occurs if a person "intentionally or knowingly causes physical contact with
another when the person knows or should reasonably believe that the other will regard the contact
as offensive or provocative." See Tex. Penal Code Ann. § 22.10(a)(1) (West Supp. 2010). 
According to his pleadings, Wiedebush and Williams intentionally and knowingly painted his
fingernails and toenails with pink polish, wrote on the bottoms of his feet, and wrapped tape around
his thumb, knowing that such contact would be offensive and provocative. In the aftermath of the
incident, they also allegedly spread rumors about his sexuality and made disparaging comments
about him to his co-workers and superiors, which he claims caused him such severe emotional
distress that eventually he felt compelled to leave his job. See Hoffmann-La Roche Inc.
v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004) (listing elements of claim for intentional infliction
of emotional distress). No expert testimony from a medical or health care professional is needed to
determine the propriety of their actions, as no professional judgment or expertise is implicated in
determining whether the elements of the alleged assault and intentional infliction of emotional
distress claims are met. The same is true as to Thorp and Voegele, who were named as defendants
because they were present during the incident and allegedly encouraged Wiedebusch and Williams
in the commission of the assault--not because of any duty arising from their roles as health
care providers.

 Further, because Drewery alleged that Wiedebusch, Williams, Thorp, and Voegele
were acting in the course and scope of their employment, the Hospital's liability is purely a question
of vicarious liability; it does not concern any act or treatment performed or furnished, or that should
have been performed or furnished, by the Hospital during Drewery's medical care, treatment, or
confinement. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10) (defining "health care"). (5)

 Because Drewery did not plead any health care liability claims, we hold that he was
not required to furnish an expert report. We sustain his issue on appeal.


CONCLUSION

 Having sustained Drewery's issue on appeal, we reverse the trial court's judgment
and remand the cause for further proceedings.


 

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

 Dissenting Opinion by Justice Goodwin

Reversed and Remanded

Filed: May 20, 2011
1. Drewery specified in his petition that he was not alleging causes of action for negligent
hiring, retaining, training, or supervision of any of the individuals involved.
2. See Tex. Civ. Prac. & Rem. Code Ann. § 41.005(b)(1) (West 2008) (providing that
although court may not award exemplary damages against defendant because of criminal act of
another, it may do so if criminal act is committed by employee of defendant); id. § 41.005(c)(3), (4)
(employer may be liable for punitive damages only if agent was employed in managerial capacity
and was acting within scope of employment, or employer ratified or approved act).
3. Drewery's original petition included several paragraphs under the heading "Intentional
Infliction of Emotional Distress" that were omitted from his first amended petition, the live pleading
in this case:



The actions described above, which were directed towards Plaintiff, were intentional. 
Defendants' conduct involved an extreme degree of risk considering the probability
and magnitude of potential harm to Plaintiff and all Defendants proceeded with
conscious indifference to the rights, safety and welfare of Plaintiff despite all
Defendants' actual, subjective awareness of the risk involved.


The acts of all the Defendants described above were extreme and outrageous, in that
all Defendants were in positions that required them to provide medical care and
treatment to Plaintiff. Plaintiff was under general anesthesia and muscular paralysis
and was physically incapable of defending himself against this assault committed by
the very professionals charged with protecting him from these horrific actions.


Further, these actions were taken either prior to or during a surgical procedure in
which Plaintiff was given anesthesia. During this type of surgical procedure, it is
imperative for the treating surgeons, nurses and staff conducting the procedure to be
able to see the patient's fingernails and toenails (to determine if cyanosis is present),
and with them covered in pink polish this was not possible. During the surgery, any
number of serious or lethal events could have happened, but the surgeons, nurses and
staff would have missed the indications because Plaintiff's nails were painted and in
fact, post-surgery, Plaintiff did develop a surgical hemorrhage, which required
emergency surgery to control the bleeding.
4. The defendants are mistaken in relying on the sole fact that they were "acting" as health
care providers at the time the alleged assault occurred, which improperly conflates the first and
second elements of the Marks test. The fact that the actions were taken by a physician or health care
provider does not necessarily mean that the suit is about a patient's treatment, lack of treatment, or
other departure from accepted standards of health care. Otherwise, every claim based on the conduct
of a physician or health care provider in a health-care setting would be subject to the expert-report
requirement. If that had been the legislature's intent, it would have defined a "health care liability
claim" to be any claim against a physician or health care provider in a medical or health care setting.
5. It is important to note that Drewery has not asserted that the Hospital was negligent in its
own right for failing to adequately supervise or train its employees. The supreme court has indicated
that claims for negligent hiring, training, or supervision against a health care facility necessarily
implicate accepted standards of safety and would therefore be considered health care liability claims
under the statutory definition. See Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 855
(Tex. 2005). Indeed, Drewery has not alleged nor sought to recover under any theories of negligence
at all. Cf. Yamada v. Friend, No. 08-0262, 2010 WL 5135334, at *4-5 (Tex. Dec. 17, 2010)
(cautioning against allowing same underlying facts to give rise to both health care liability claims
and claims based on breaches of ordinary standards of care); see also Turtle Healthcare Group,
L.L.C. v. Linan, No. 09-0613, 2011 WL 711102, at *2-3 (Tex. Feb. 25, 2011) (same).