**DUAL D HEALTHCARE OPERATIONS, INC. d/b/a Kemp Care Center and a/k/a Dual D Operations, Inc., and Dual D Life Care, Inc., jointly and severally, Appellants,**

v.

**John KENYON, Appellee.**

No. 05–08–01233–CV.

Court of Appeals of Texas, Dallas.

June 29, 2009.

---

Aldean E. Kainz, Jackson Walker, LLP, Austin, TX, for Appellant.

David A. Schiller, The Schiller Firm, Plano, TX, George Breck Harrison, Austin, TX, for Appellee.

Before Justices RICHTER, LANG and MURPHY.

## OPINION

Opinion By Justice RICHTER.

This appeal arises from a patient's fall in a hospital hallway. In a single issue, appellants Dual D Healthcare Operations, Inc. d/b/a Kemp Care Center and a/k/a Dual D Operations, Inc., and Dual D Life Care, Inc. (collectively, "Nursing Home") challenge the trial court's order denying their motion to dismiss on the ground that appellee John Kenyon's claim is a health care liability claim and he failed to comply with the expert report requirements of section 74.351(a) of the Texas Civil Practice and Remedies Code.[1] Because we con-

---

1. Kenyon's claim arose from an incident on January 6, 2005 and is governed by the law then in effect. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 875–76, ("Former Code") (amended 2005) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.

clude that Kenyon's claims do not constitute health care liability claims, we affirm the judgment of the trial court.

## A. Background

On January 6, 2005, Kenyon was admitted to the Nursing Home for care and treatment of a bone infection with intravenous therapy. That evening, when his roommate wanted to turn off the television in their shared hospital room, Kenyon left the room to go to the recreation room where he could continue watching television. He fell in a hall where workers had been stripping and rewaxing the floor. Kenyon was subsequently discharged and filed a lawsuit against the Nursing Home. In his petition, Kenyon alleged he "slipped and fell due to the dangerous condition of a liquid/slippery substance on the floor of [the Nursing Home's] premises." Kenyon asserted no claims for breach of any standard of medical care. The Nursing Home filed a motion to dismiss his claim when Kenyon failed to file an expert report. The trial court denied the motion to dismiss concluding Kenyon's slip and fall case fell outside the scope of former chapter 74. This interlocutory appeal ensued.

## B. Standard of Review

■ Whether a claim is a health care liability claim is a question of law we review de novo. *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex.App.-Dallas 2007, pet. denied).

## C. Applicable Law

Section 74.351(a) of the Former Code required that a claimant bringing a health care liability claim must, not later than the 120th day after filing suit, serve on each party or the party's attorney one or more expert reports for each physician or health care provider against whom a liability claim is being asserted. If a report was not served by the deadline, upon motion by the affected physician or health care provider, the statute required dismissal of the action with prejudice and an award of attorney's fees and costs. Former Code § 74.351(b) (emphasis added). The expert report requirements applied to a patient's claim as long as the claim fell within the statutory definition of a health care liability claim contained in the Former Code § 74.001(a)(13) which defined the term as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

■ When the essence of the suit is a health care liability claim, a party cannot avoid the requirements of the statute through the artful pleading of his claim. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex.2005);[2] *Garland*

2008)). Unless otherwise noted, statutory references are to the Former Code.

2. *Diversicare* was decided under the Medical Liability Insurance Improvement Act ("MLIIA"). Tex.Rev.Civ. Stat. Ann. art. 4590i, which was repealed by Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 844, eff. Sept. 1, 2003. The MLIIA defined a health care liability claim as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of a patient...." The 2003 Code added the phrase "directly related to health care." Former Code § 74.001(a)(13). *See Omaha Healthcare Ctr., L.L.C. v. Johnson*, 246 S.W.3d 278, 282–83 (Tex.App.-Texarkana 2008, pet. filed) (because the Former Code inserted the phrase "directly related to health care" im-

*Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex.2004). Whether a claim falls within the definition of a health care liability claim requires an examination of the underlying nature of the claim. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994); *Groomes v. USH of Timberlawn, Inc.,* 170 S.W.3d 802, 806 (Tex.App.-Dallas 2005, no pet.). We consider the alleged wrongful conduct as well as the duties allegedly breached. *Wilson N. Jones Mem'l Hosp. v. Ammons,* 266 S.W.3d 51, 57 (Tex.App.-Dallas 2008, pet. filed) (citing *Lee,* 235 S.W.3d at 451). If the act or omission that forms the basis of the complaint is an inseparable part of the rendition of health care services, or if it is based on a breach of the standard of care applicable to health care providers, then the claim is a health care liability claim. *Vanderwerff v. Beathard,* 239 S.W.3d 406, 409 (Tex.App.-Dallas 2007, no pet.); *Garland Cmty. Hosp.,* 156 S.W.3d at 544 (citing *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995)); *MacPete v. Bolomey,* 185 S.W.3d 580, 584 (Tex. App.-Dallas 2006, no pet.). Within these parameters, we examine whether the underlying nature of Kenyon's allegations constitutes a health care liability claim. *Garland Cmty. Hosp.,* 156 S.W.3d at 546.

## D. Kenyon's Claims

■ The trial judge denied the Nursing Home's motion because the claims are not health care liability claims and therefore not subject to the requirements of former chapter 74. Thus, the question raised by Kenyon's pleadings is whether his injury arose from either the rendition of health care services or a breach of safety standards directly related to health care. The conduct about which Kenyon complains occurred during the course of his treatment in the Nursing Home. He fell in a hallway used by ambulatory patients to walk from their hospital rooms to the recreation room. The record, however, does not indicate the fall arose from any aspect of his medical care.

Kenyon's injury would only constitute a health care liability claim if it was related to the rendition of health care services by the Nursing Home. For example, one patient's claim of assault by another patient was held to be a health care liability claim because the health care provider failed to provide adequate supervision of its medical patients and negligently allowed the sexual assault to occur. *Diversicare,* 185 S.W.3d at 848. *See also Ammons,* 266 S.W.3d at 57 (non-patient's claims dismissed because her injuries were sustained in hospital waiting room when unrestrained, violent psychiatric patient kicked her). In both *Diversicare* and *Ammons,* the health care provider failed to follow "accepted standards of medical care, or health care, or safety ... directly related to health care...." Former Code § 74.001(a)(13); *Diversicare,* 185 S.W.3d at 848; *Ammons,* 266 S.W.3d at 57. Relying heavily on *Diversicare,* the Nursing Home contends that Kenyon's allegations are related to a claimed failure of a health care provider to provide a safe environment and, therefore, deemed to constitute health care liability claims.

Kenyon's claim, however, arises from a slippery substance on the floor of the Nursing Home's hallway where the Nursing Home concedes its workers were stripping and rewaxing the floors. He makes no allegation of the failure of any safety standard related to medical care, and we fail to find one. Kenyon's allegations are similar to the patient's claim in *Harris*

---

mediately after the phrase "safety or professional or administrative services" without a comma, the inserted phrase modified and limited the term safety to safety directly related to health care).

490

*Methodist Fort Worth v. Ollie,* 270 S.W.3d 720 (Tex.App.-Fort Worth 2008, pet. filed), where the patient fell on a slippery floor as she tried to get out of a bathtub. The Fort Worth court concluded her claim was not a health care liability claim because a fact-finder would not require expert testimony to comprehend the patient's claims and her fall from the bathtub was not inseparable from the rendition of medical services and accepted standards of safety within the health care industry. *Id.* at 727.

Other courts have also distinguished personal injury claims from health care liability claims governed by chapter 74 of the Texas Civil Practice and Remedies Code. *See, e.g., Omaha Healthcare Center, L.L.C. v. Johnson,* 246 S.W.3d 278, 286–87 (Tex.App.-Texarkana, pet. filed) (negligence claim arising from patient's death due to spider bite was not a health care liability claim because it stemmed from an alleged departure from general safety standards and was not directly related to health care); *Valley Baptist Med. Ctr. v. Stradley,* 210 S.W.3d 770, 774 (Tex.App.-Corpus Christi 2006, pet. denied) (patient's fall from treadmill in medical center's fitness center was a personal injury claim "of the most pedestrian nature" and not a health care liability claim because the patient raised no allegation of a departure from accepted standards of safety directly related to medical care); *Shults v. Baptist St. Anthony's Hosp. Corp.,* 166 S.W.3d 502, 505 (Tex. App.-Amarillo 2005, pet. denied) (when diabetes patient injured his foot by stepping on a sharp paint chip in bathroom, his claim was not a health care liability claim). Based on our review of the record and the applicable law, we conclude the trial court did not err when it held Kenyon's claim did not fall within the scope of former chapter 74 of the Texas Civil Practice and Remedies Code and affirm the trial court's decision.

### E. Conclusion

We conclude Kenyon's claim is not a health care liability claim and, therefore, Kenyon was not required to file an expert report. We affirm the trial court's order denying the motion to dismiss by the Nursing Home.