Gary D. STROBEL and Strobel
& Associates Prosthetics,
Inc., Appellants,

v.

Larry and Patricia MARLOW,
Appellees.

No. 05–09–01047–CV.

Court of Appeals of Texas,
Dallas.

March 21, 2011.

W. Kelly Puls, Law Office of W. Kelly Puls, Jeffrey H. Kobs, The Law Offices of Jeffrey H. Kobs, Mark Haney, Ron L. Hundley, Kobs, Haney & Hundley, L.L.P., Fort Worth, TX, for Appellees.

Before Justices MOSELEY, BRIDGES, and FILLMORE.

## OPINION

Opinion By Justice MOSELEY.

In this accelerated interlocutory appeal, we must first decide if appellant Gary D. Strobel, a prosthetist, is a "health care provider" as that term is defined in chapter 74 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(12)(A) (West 2005). If he is, then we must decide whether appellees Larry and Patricia Marlow complied with the expert report requirements of that chapter. *See id.* § 74.351(a) (West 2011). As discussed herein, we conclude Strobel is a health care provider under the statute, and that the Marlows failed to timely serve an expert report, mandating dismissal. Thus, we reverse the trial court's order denying appellants' motions to dismiss with prejudice and render judgment dismissing the Marlows' causes of action with prejudice.

## I. BACKGROUND

The Marlows sued Strobel and appellant Strobel & Associates Prosthetics, Inc.[1] for damages resulting from Strobel's alleged negligence. They alleged that as a result of a cast made by Strobel, Larry suffered

J. Wade Birdwell, Jennifer Morris Andrews, Wallace, Andrews, & Stouffer, P.C., Fort Worth, TX, for Appellants.

1. The Marlows sued "Gary D. Strobel, Individually and d/b/a Strobel & Associates Prosthetics." However, opposing pleadings asserted that the defendants were "Gary D. Strobel (incorrectly named as Gary Strobel d/b/a Strobel & Associates Prosthetics) and Strobel & Associates Prosthetics, Inc." The body of the order says the defendants are "Gary Strobel (incorrectly named as Gary Strobel d/b/a Strobel & Associates Prosthetics) and Strobel & Associates Prosthetics, Inc." The notice of accelerated appeal states it was filed by defendants Gary D. Strobel and Strobel & Associates Prosthetics, Inc. Our style of the case follows the trial court's designation in the order's body and the appellants' designation in their notice of accelerated appeal.

an ulcer in his leg that required three surgeries in an attempt to repair.[2] Appellants answered, denying the allegations and asserting, among other things, that the Marlows' causes of action were health care liability claims.

The Marlows filed their original petition on September 12, 2008.[3] The 120th day after suit was filed was January 10, 2009. On February 18, 2009, appellants filed a Motion to Dismiss with Prejudice and Motion for Statutory Sanctions asserting that the Marlows failed to serve appellants' counsel with an expert report within the 120 days required by civil practice and remedies code section 74.351(a). *See id.* § 74.351(b).

On March 10, 2009, appellants filed a Supplemental Motion to Dismiss with Prejudice, Motion for Statutory Sanctions and Objections to Chapter 74 Report, supported by affidavits and other evidence. In this supplemental motion, appellants asserted that on February 18, 2009, after appellants had filed their motion to dismiss, the Marlows' counsel hand-delivered to appellants' counsel's office a cover letter, dated January 9, 2009 and file-stamped on January 9, 2009 by the Collin County district clerk, requesting the clerk to file the attached expert report from Mark H. Bussell, M.D., and indicating fax transmission to appellants' counsel.[4] After receiving the hand-delivered copy, appellants' counsel requested a fax confirmation showing the report had been faxed to her office; counsel also thoroughly searched her files to ascertain if the faxed report had been received but misfiled. However, the Marlows failed to provide a fax confirmation showing service on counsel, and counsel failed to find the Marlows' letter to the court and the Bussell document in her files. Appellants moved to dismiss the Marlows' claim alleging failure to "serve" the report pursuant to section 74.351(a) and rule of civil procedure 21a and failure of the Bussell document to meet the statutory criteria as an expert report.

The Marlows responded to appellants' motions to dismiss. They argued their causes of action were not health care liability claims and thus they were not required to file an expert report. In the alternative, they argued that Bussell's report met the statutory criteria as an expert report and that they complied with rule of civil procedure 21a as to service and provided evidence of service.

The trial court heard the motions to dismiss and response, took them under advisement, and requested further briefing. Subsequently, the trial court denied the motions to dismiss without stating the grounds on which it relied. This accelerated interlocutory appeal followed. *See* TEX.

---

**2.** The Marlows alleged Strobel was negligent (quoting):
> in failing to properly examine and diagnose [Larry];
> in failing to consult a specialist in the field of prosthetics when [Strobel] knew or should have known that his skills, knowledge[,] or facilities were inadequate to properly treat the patient of the circumstances as they then existed[;]
> in failing to refer [Larry] to a specialist or medical doctor in the field of prosthetics for his condition;
> in the failure to fit [Larry] with the proper prosthetic device for [Larry]'s condition.

They sought damages for personal injuries; physical pain and suffering; mental anguish; physical impairment; disfigurement; loss of enjoyment of life; necessary and reasonable medical, hospital and custodial care expenses; and future medical care.

**3.** The Marlows filed their petition in Dallas County. The trial court granted appellants' motion to transfer venue to Collin County.

**4.** No mention was made of a curriculum vitae for Bussell, nor does a CV appear in the record.

Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (West 2008) (providing for appeal from interlocutory order denying relief sought by defendant health care provider pursuant to section 74.351(b)); Tex. Rs.App. P. 25.1, 26.1(b). In a single issue, appellants argue: (1) Strobel is a health care provider, thus the Marlows' claims are health care liability claims, and (2) their failure to serve timely Bussell's report mandated dismissal of these claims with prejudice.

## II. IS STROBEL A HEALTH CARE PROVIDER?

As a preliminary matter, the parties dispute whether the Marlows' claims are health care liability claims, and thus subject to the expert report requirements of section 74.351.

To constitute a health care liability claim, a cause of action must, among other things, be brought against a "health care provider" or a "physician." *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13).[5] In *Marks v. St. Luke's Episcopal Hospital*, 319 S.W.3d 658 (Tex.2010), the supreme court discussed the definition of a "health care liability claim" under a predecessor statute [6]:

> Under this definition, a health care liability claim consists of three elements. First, a physician or a health care provider must be the defendant. Second,

the suit must be about the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care or health care or safety. And, third, the defendant's act, omission, or other departure must proximately cause the patient's injury or death.

*Id.* at 662; *see Nexus Recovery Ctr., Inc. v. Mathis*, 336 S.W.3d 360, 366 (Tex.App.-Dallas 2011, no pet. h.) (applying *Marks*'s analytical framework to section 74.001(a)(13)).

The sole dispute among the parties as to whether the Marlows' causes of action are health care liability claims is whether Strobel is a "health care provider." [7]

### A. Standard of Review

■■ Ordinarily, we review the denial of a motion to dismiss filed pursuant to section 74.351 under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001). However, whether a cause of action is a health care liability claim is a question of law. *Dual D Healthcare Operations, Inc. v. Kenyon*, 291 S.W.3d 486, 488 (Tex.App.-Dallas 2009, no pet.); *see Marks*, 319 S.W.3d at 663 (explaining principles of statutory construction). Thus, to the extent the issue involves whether chapter 74 applies to the

---

5.  Chapter 74 defines a "health care liability claim" as

    a cause of action *against a health care provider or physician* for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

    Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (emphasis added).

6.  *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041 (defining "health care liability claim"; codified at former article 4590i, section 1.03(a)(4) of the Texas Revised Civil Statutes; subsequently amended), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

7.  It is undisputed that Strobel is not a physician, and the Marlows make no other argument as to whether their causes of action meet the other elements of the statutory definition of a health care liability claim.

plaintiff's claims, we apply a de novo standard of review. *See Dual D Healthcare Operations, Inc.,* 291 S.W.3d at 488.

## B. Applicable Law

A "health care provider" is defined as

> any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including:
>
> > (i) a registered nurse;
> >
> > (ii) a dentist;
> >
> > (iii) a podiatrist;
> >
> > (iv) a pharmacist;
> >
> > (v) a chiropractor;
> >
> > (vi) an optometrist; or
> >
> > (vii) a health care institution.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(12)(A).

The Orthotics and Prosthetics Act defines a "prosthesis" in part as "a custom-fabricated or custom-fitted medical device used to replace a missing limb, ... but that is not surgically implanted. ...." TEX. OCC.CODE ANN. § 605.002(17) (West 2004). The act defines "prosthetics" as "the science and practice of measuring, designing, fabricating, assembling, fitting, adjusting, or servicing a prosthesis under an order from a licensed physician, chiropractor, or podiatrist." *Id.* § 605.002(18). Further, the act defines the "profession of orthotics or prosthetics" as:

> allied health care medical services used to identify, prevent, correct, or alleviate acute or chronic neuromuscular or musculoskeletal dysfunctions of the human body that support and provide rehabilitative health care services concerned with the restoration of function, prevention, or progression of disabilities resulting from disease, injury, or congenital anomalies. Orthotic and prosthetic services include direct patient care, includ-

ing consultation, evaluation, treatment, education, and advice to maximize the rehabilitation potential of disabled individuals.

*Id.* § 605.002(16). Finally, subject to exceptions not relevant here, "[a] person may not practice ... prosthetics, ... unless the person holds a license issued by the [Texas Board of Orthotics and Prosthetics] under this chapter." *Id.* § 605.251 (West 2004).

## C. Analysis

■ Appellants presented evidence that Strobel was licensed by the Texas Board of Orthotics and Prosthetics as a prosthetist in 1999; a copy of his certificate from the board is in the record, showing him as a licensed prosthetist and that his license was current in 2006. Strobel also described his duties at Strobel & Associates Prosthetics, Inc., which Strobel incorporated in 2003. He provided "direct patient care": meeting with patients referred to him by their physicians; taking patients' medical and personal histories; physically examining them; discussing treatment options and developing a plan of care requiring creation and evaluation of prostheses and other devices; and creating a prosthesis for each patient, fitting it, and modifying it over time as needed. Strobel also described how he applied these duties to Larry, as set out above.

The Marlows argue that the field of prosthetics does not require a medical degree, and prosthetists are not listed or contemplated as "medical providers" under chapter 74. We note that section 74.001(a)(12)(A) does not define a health care provider in terms of a medical degree, but whether a person provides "health care." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(12)(A). Although a prosthetist is not included in the list of health care providers, that list is not exclusive. *See Christus Health v. Beal,* 240 S.W.3d 282,

286 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *Pro Path Servs., L.L.P. v. Koch,* 192 S.W.3d 667, 671 (Tex.App.-Dallas 2006, pet. denied)).

In a related argument, the Marlows assert that courts have held that certain health-related professionals are not health care providers under chapter 74. For example, they cite *Ponce v. El Paso Healthcare System, Ltd.,* 55 S.W.3d 34 (Tex.App.-El Paso 2001, pet. denied), for the proposition that an occupational therapist is not a health care provider under chapter 74. However, that case was decided under the predecessor statute. *See id.* at 36 (considering definition of "health care provider" under section 1.03(a)(3) of former article 4590i of the civil statutes). As explained in *Christus Health,* 240 S.W.3d at 285–86, the language of the definition in chapter 74, which repealed the previous statute and replaced it with amended language, made the previous definition obsolete. The list of health care providers in former article 4590i was introduced by "as"—an "exclusive" listing. However, the amended definition replaces "as" with "including"—a nonexclusive listing. *See id.* Accordingly, the Marlows' reliance on authority predating the revised definition is misplaced because such interpretations "have no application" to the amended definition. *See id.* at 286; *Pro Path Servs., L.L.P.,* 192 S.W.3d at 670–71.

The Marlows also argue that Strobel described himself as a "technician" who works with "mechanical devices." However, Strobel stated he began working in 1982 as a "prosthetics technician," assisting a certified prosthetist in evaluating patients and making and properly fitting artificial limbs. This may describe Strobel's status before his licensure in 1999, but not his status as a licensed prosthetist in 2006, when the events giving rise to this suit occurred.

We conclude the undisputed evidence shows Strobel performed acts and treatments relating to an artificial leg for, to, or on behalf of Larry during his medical care or treatment as an amputee. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10), (12)(A); *Christus Health,* 240 S.W.3d at 285–87 (applying facts to chapter 74 standards and determining that residential drug and alcohol treatment program was health care provider). Thus, we agree with appellants that Strobel is a health care provider. As a result, we conclude the Marlows' claim against appellants is a health care liability claim and subject to the expert report requirements set forth in section 74.351(a).

## III. DID THE MARLOWS TIMELY SERVE AN EXPERT REPORT?

Finally, we address the issue whether Bussell's report was timely served. Appellants argue "serve" has the same meaning in section 74.351(a) as in rule of civil procedure 21a and the Marlows, as the party seeking to establish compliance with rule 21a, had the burden to prove actual receipt of the document and not just that one of the authorized methods was employed in attempting compliance. Appellants argue a transmission verification report would be evidence of proper service by telephonic document transfer. The Marlows argue they provided evidence that service was accomplished and that no transmission verification report is required to prove service by facsimile transmission.

### A. Applicable Law

As noted above, "serve" and "served" are not defined in section 74.351, but the statute provides that a term used but undefined in chapter 74 "shall have such meaning as is consistent with the common law." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(b). Other courts have considered

the meaning of these words and concluded they have the meaning provided for in rule of civil procedure 21a. *See, e.g., Fulp v. Miller*, 286 S.W.3d 501, 511 (Tex.App.-Corpus Christi 2009, no pet.); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 871 (Tex.App.-Houston [1st Dist.] 2007, pet. denied); *Jain v. Stafford*, No. 2–06–450–CV, 2007 WL 1502084, at *3 (Tex.App.-Fort Worth May 24, 2007, pet. denied) (mem. op.); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 459 (Tex.App.-Austin 2006, no pet.); *Kendrick v. Garcia*, 171 S.W.3d 698, 703–04 (Tex.App.-Eastland 2005, pet. denied). These cases reason that the replacement of "furnish" in article 4590i with "serve" in the amended section 74.351(a), the applicability of the rules of civil procedure to health care liability claims, and the plain language—use of "serve" and "served"—show the legislature's intent that claimants comply with rule 21a's requirements to fulfill section 74.351(a)'s requirements. *See, e.g., Fulp*, 286 S.W.3d at 510. We agree and adopt the analysis and conclusions of our sister courts.

■■■ Among other methods of service, rule of civil procedure 21a provides for "[s]ervice by telephonic document transfer." Tex.R. Civ. P. 21a. Further, as relevant here:

> The party or attorney of record shall certify to the court compliance with this rule in writing over signature and on the filed instrument. A certificate by a party or an attorney of record, or the return of an officer, or the affidavit of any person showing service of a notice shall be prima facie evidence of the fact of service. Nothing herein shall preclude any party from offering proof that the notice or instrument was not received, . . . .

*Id.* A certificate or affidavit of service is prima facie evidence that service took place. *Mocega v. Urquhart*, 79 S.W.3d 61, 65 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). But this presumption vanishes if the opposing party offers proof of non-receipt. *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex.1987). The sender may rejoin by presenting other evidence of delivery, but if the sender relies on office routine to support an inference of receipt, there must be corroborating evidence. *Mocega*, 79 S.W.3d at 65 (citing *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 928 (Tex.1999) (per curiam)).

■■ Receipt is an element of service. *See Payton v. Ashton*, 29 S.W.3d 896, 898 (Tex.App.-Amarillo 2000, no pet.). A notice properly sent pursuant to rule 21a raises a presumption that notice was received. *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex.2005) (per curiam). But when that presumption is challenged, it must be proved according to the rule. *Id.*

**B. Discussion**

The Marlows point to the following as constituting evidence of service.

**1. their counsel's file-stamped January 9, 2009 letter to the Collin County district clerk showing "cc" to appellants' counsel and her fax transmission number and requesting filing of Bussell's report**

■ The January 9, 2009 letter is on counsel's letterhead but is signed by a legal assistant to the Marlows' counsel, not by counsel himself or by a party. The Marlows refer to this as a "transmittal letter" and say it shows the report had been or was being faxed to counsel and contained her correct fax number. A certificate is "[a] document in which a fact is formally attested." Black's Law Dictionary 239 (8th ed. 2004). A certificate of service "certifies to the court that a copy has been mailed to or otherwise served on

all other parties." *Id.* at 241. The purpose of a certificate of service is to prove that the documents to which the certificate relates were actually served on the party. *Approximately $14,980.00 v. State,* 261 S.W.3d 182, 187 (Tex. App.-Houston [14th Dist.] 2008, no pet.).

There is no certificate of service on this letter, or on the Bussell document, certifying that copies of the report filed with the court were transmitted by fax or otherwise served on appellants or their counsel. Nor is there formal attestation of the fact of service on opposing counsel or parties. *See Seton Nw. Hosp.,* 212 S.W.3d at 456, 459-60 (discussing significance of absence of certification of service); *cf. Wembley Inv. Co.,* 11 S.W.3d at 927 (certificate of service on motion for nonsuit creates presumption of its receipt). Merely listing a "cc" and a fax transmission number does not show actual transmission, that is, that the document was sent and received. *See Payton,* 29 S.W.3d at 898 (stating receipt is an element of service). We conclude that the January 9, 2009 letter does not satisfy rule 21a's requirement of a certificate of service to establish prima facie evidence of the fact of service by telephonic document transmission. *See* Tex.R. Civ. P. 21a.

### 2. the two attorneys' affidavits

■ Two attorneys' affidavits were attached to the Marlows' response to appellants' motions to dismiss, and they were referred to and discussed at the hearing as prima facie evidence that the Bussell report was faxed to appellants' counsel. The Marlows' counsel's affidavit said, in relevant part: "On Friday, January 9, 2009, a facsimile transmittal sheet letter to [appellants' counsel] via fax no. [appellants' counsel's correct fax number] for the transmittal of Dr. Bussell's expert report was prepared by [counsel's paralegal]." The transmittal sheet was attached to the

affidavit. Counsel also stated that, based on his opinion, his review of his file, the routine operations of his office, and the fact that his file reflected file-stamped copies of the transmittal letter and Bussell's expert report, he believed the report was transmitted to the Marlows' attorney of record on January 9, 2009.

The other affidavit was by another attorney whose office was at the Marlows' counsel's office location and who used the same fax machine. In relevant part, this attorney said he routinely used this fax machine to transmit documents during January 2009, and he was not aware of any time period in January 2009, that the fax machine was not operating properly or not available for use in the routine operation of their businesses.

The Marlows' reliance on these affidavits as evidence of service is misplaced because they are not direct, positive testimony of telephonic document transfer to appellants' counsel. They are evidence of the ability to fax documents (and perhaps evidence of preparation to fax), but not of the actual facsimile transmission.

In *Texas Employers Insurance Ass'n v. Wermske,* 162 Tex. 540, 349 S.W.2d 90, 92 (Tex.1961), the supreme court reviewed similar evidence, specifically, an attorney testified he prepared a claim for filing: "It was prepared for deposit and I can't just tell you that I actually myself carried it to the post office, or whether the girl did at the office, but it was prepared for mailing and left for deposit in the United States mail." The letter was left on a desk for mailing. *Id.* The court concluded that this testimony was not evidence that the attorney or his secretary mailed the letter. *Id.* "Where the sender relies on office custom to support the inference of mailing, the majority rule is that there must be corroborating circumstances to support the

inference that the custom has been carried out." *Id.; see Mocega,* 79 S.W.3d at 65.

As in *Wermske,* the attorneys' affidavits here imply the report was prepared for faxing according to office custom, but no paralegal or legal assistant testified that the office custom had been carried out as to telephonic document transfer. As in *Wermske,* the evidence here is not sufficient to raise the presumption of receipt. *See Wermske,* 349 S.W.2d at 92; *see also Mathis,* 166 S.W.3d at 745 (no prima facie proof of service when no certificate of service, no return receipt from certified or registered mail, and no affidavit certifying service, only "oral assurance of counsel" that notice was sent in record).

### 3. testimony at the hearing on the motions to dismiss and response

The record of the hearing on the motions to dismiss and response shows that the parties' counsel argued their motions and the two attorneys' affidavits discussed above. It does not show that anyone presented sworn testimony. Consequently, reliance on statements during that hearing as evidence of service is misplaced. *See McCain v. NME Hosps., Inc.,* 856 S.W.2d 751, 757 (Tex.App.-Dallas 1993, no writ) ("Motions and arguments of counsel are not evidence.").

We reject the argument that the Marlows provided evidence that service was accomplished. We need not consider the evidence of non-receipt or rejoinder evidence of delivery. *Wermske,* 349 S.W.2d at 92. We resolve appellants' issue in their favor. We need not address the sufficiency of Bussell's report. *See* TEX. R.APP. P. 47.1.

The Marlows request, if we conclude they did not comply with section 74.351(a),

that we either grant or remand to the trial court to consider granting a thirty-day extension pursuant to section 74.351(c). However, a trial court has no authority to grant an extension when no report is served within 120 days of filing the claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c); *Badiga v. Lopez,* 274 S.W.3d 681, 684–85 (Tex.2009). Likewise, we have no discretion to remand as the Marlows request. Such a remand is appropriate only if we conclude a timely served report is deficient. *See Leland v. Brandal,* 257 S.W.3d 204, 207 (Tex.2008) (court of appeals has discretion to remand case for consideration of thirty-day extension to cure deficiency court of appeals found in expert report).

## IV. CONCLUSION

January 10, 2009, was the deadline for the Marlows to serve an expert report pursuant to section 74.351(a). They failed to do so, instead serving a report on appellants' counsel personally on February 18, 2009. Such failure mandates dismissal with prejudice of their claims against appellants. *See* TEX CIV. PRAC. & REM.CODE ANN. § 74.351(b); *Ogletree v. Matthews,* 262 S.W.3d 316, 319 (Tex.2007). Appellants request that we reverse the order denying their motions to dismiss the Marlows' health care liability claims with prejudice and render judgment dismissing with prejudice those claims.[8] Accordingly, as requested by appellants, we reverse the trial court's order denying appellants' motions to dismiss and render judgment dismissing with prejudice the Marlows' claims.

---

8. *See State v. Brown,* 262 S.W.3d 365, 370 (Tex.2008) (reviewing court does not sua

sponte grant relief not sought).