**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed February 25, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00542-CV

## ELEFTHERIOS KALDIS, A/K/A TED KALDIS, AND MONICA KALDIS, Appellants

## V.

## AURORA LOAN SERVICES, Appellee

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-35135**

## O P I N I O N

This is an appeal from a summary-judgment dismissal of a wrongful-foreclosure claim, among others. The main issue on appeal centers on proof of statutory notice of the foreclosure sale and whether there is a fact issue as to the existence of a defect in the foreclosure-sale proceedings. Because we conclude the trial court erred in granting summary judgment as to the wrongful-foreclosure claim, we reverse and remand as to that claim. We affirm the remainder of the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants/Plaintiffs Eleftherios Kaldis, a/k/a Ted Kaldis, and Monica Kaldis owned the real property at 2920 Pasadena Boulevard in Pasadena, Texas (the "Property"). In July 2007, the Kaldises executed a promissory note and deed of trust securing the note with a deed-of-trust lien on the Property. The Kaldises defaulted on the note. The mortgage servicer, appellee/defendant Aurora Loan Services gave notice of default and acceleration and began foreclosure proceedings against the Property. In July 2008, Aurora gave the Kaldises the opportunity to enter into a Special Forbearance Agreement ("Forebearance Agreement"). Although Aurora argues that the Kaldises did not timely take the steps necessary to enter into this agreement, the Kaldises assert that they entered into it and that Aurora ratified their acceptance of the Forbearance Agreement. Presuming that the Forbearance Agreement was accepted, the Kaldises' next payment was due on October 1, 2008. The Kaldises assert that they made this payment when their insurer sent a check for Hurricane Ike damage to Aurora.

Aurora decided to proceed with a November 4, 2008 foreclosure sale on the Property. Aurora asserts that written notice of foreclosure was properly served on the Kaldises by certified mail, but the Kaldises dispute this assertion and claim that they did not receive this foreclosure notice by certified mail or otherwise.

Following a nonjudicial foreclosure sale of the Property, Aurora filed an Appointment of Substitute Trustee and Substitute Trustee's Deed in the Harris County real property records. After the Kaldises refused to vacate the Property, Aurora initiated a forcible-entry-and-detainer action. Aurora obtained a judgment in its favor[1] in the forcible-detainer action but did not enforce it until after the trial

---

[1] The Kaldises unsuccessfully appealed to the county court and then to the First Court of Appeals. *See Kaldis v. Aurora Loan Services*, No. 01-09-0027-CV, 2010 WL 2545614 (Tex.

court rendered its summary judgment in the case under review.

In the trial court, the Kaldises filed suit against Aurora, asserting claims for (1) wrongful foreclosure and related declaratory relief, (2) wrongful eviction and related declaratory relief, (3) breach of contract, (4) fraud, and (5) usury.

Aurora filed a motion for summary judgment, asserting the following grounds:

(1) as a matter of law, the summary judgment evidence shows that there were no defects in the foreclosure proceedings and therefore the wrongful-foreclosure claim fails as a matter of law;

(2) there is no evidence of any defect in the foreclosure proceedings and therefore the wrongful-foreclosure claim fails as a matter of law;

(3) as a matter of law, the summary judgment evidence shows that the Kaldises have not been evicted from the Property and therefore the wrongful-eviction claim fails as a matter of law;

(4) there is no evidence that the Kaldises have been evicted from the Property and therefore the wrongful-eviction claim fails as a matter of law;

(5) there is no evidence of the essential elements of the breach-of-contract claim;

(6) there is no evidence of the essential elements of the fraud claim;

(7) the claims for declaratory relief fail because the related claims for wrongful-foreclosure and wrongful-eviction fail; and

(8) there is no evidence of the essential elements of the usury claim.

The trial court granted Aurora's summary-judgment motion and dismissed all of the Kaldises' claims with prejudice.

## II. ISSUES PRESENTED

On appeal, the Kaldises assert the following issues: (1) the trial court erred in granting a traditional and no-evidence summary judgment as to the wrongful-

App.—Houston [1st Dist.] June 24, 2010, pet. dism'd w.o.j.) (mem. op.).

foreclosure claim; (2) the trial court erred in granting a no-evidence summary judgment as to the breach-of-contract, fraud, and usury claims; (3) fact issues exist precluding summary judgment; (4) the trial court erred in granting summary judgment while the Kaldises' motion to compel production of documents was pending; (5) the trial court erred in denying the Kaldises' motion to compel production of documents; (6) the trial court erred by including dismissal with prejudice language in its summary-judgment order; and (7) the trial court erred by denying the Kaldises' motion to set supersedeas bond.

## III. ANALYSIS

**A.    Did the trial court err in granting summary judgment as to the claims for wrongful foreclosure and related declaratory relief?**

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, this court ascertains whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, this court considers all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire*

4

*& Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).  When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, the summary judgment must be affirmed if any of the independent summary-judgment grounds is meritorious.  *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

Under their first issue, the Kaldises assert that the summary-judgment evidence raised a genuine issue of material fact as to four alleged defects in the foreclosure-sale proceedings.[2]  One of these defects is Aurora's alleged failure to serve written notice of the foreclosure sale on the Kaldises in compliance with section 51.002(b) of the Texas Property Code.  *See* Tex. Prop. Code Ann. § 51.002(b) (West 2014).  Under this statute, notice of the foreclosure sale must be given at least twenty-one days before the date of the sale by, among other things, "serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." Thus, to have given proper notice of the foreclosure sale, Aurora was required to have served written notice on the Kaldises by certified mail on or before October 13, 2008.  *See id.*  Service of this notice by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the Kaldises at their last known address.  Tex. Prop. Code Ann. § 51.002(e) (West 2014).  Aurora asserts that notice of foreclosure was properly served on the Kaldises by employees of the law firm of Brown & Shapiro, LLP on October 13, 2008.

The summary-judgment evidence contains an affidavit of Kirk Schwartz, in

---

[2] In its traditional and no-evidence summary-judgment grounds, the only element of the Kaldises' wrongful-foreclosure claims that Aurora challenged was the existence of a defect in the foreclosure-sale proceedings.  Thus, the other elements of the wrongful-foreclosure claims are not at issue in this appeal.

which he testifies that two exhibits attached to his affidavit are business records of Shapiro Schwartz, LLP f/k/a Brown & Shapiro, LLP.[3]  Each exhibit is substantially similar, one is addressed to Ted Kaldis and the other is addressed to Monica Kaldis.    Each exhibit starts with a two page letter from the "Foreclosure Department" of Brown & Shapiro, LLP ("Brown & Shapiro").    Each letter is addressed to the respective spouse at the Property address.  Underneath the firm letterhead at the top of each letter is the date "October 13, 2008."  Each letter is entitled "Notice of Acceleration and Posting" and states that the law firm has been retained by Aurora to initiate foreclosure proceedings.  Each letter contains a two-page enclosure entitled "Notice of Trustee's sale," which gives notice of a foreclosure sale on the Property to be conducted on November 4, 2008 (the "Foreclosure Date").  Each notice recites that it was signed on October 13, 2008 by Substitute Trustee Cathy Ashcraft.    Following these four pages, each exhibit contains a single page that appears to be a printout of the items that ordinarily would be used to send a letter by certified mail to the respective spouse, including a "Receipt for Certified Mail" (PS Form 3800) and a return receipt (PS Form 3811), often called a "green card."  These items are not yet separated from each other, and none of these items were attached to the other four pages in the exhibit when the copies of these pages were made.  Each "Receipt for Certified Mail" contains the date "November 4, 2008" under the address.  Of course, because these items have not been separated and attached to any item to be mailed, the "Receipt for Certified Mail" contains no postmark or date reflecting the date of mailing, nor does the return receipt reflect receipt by the addressee.

Though each letter from Brown & Shapiro is dated October 13, 2008 and each foreclosure notice recites that it was signed on this date, nothing in either

---

[3] Other than proving up these documents, Schwartz does not provide any testimony.

exhibit recites or reflects that any document was mailed on October 13, 2008, or on any other date. The summary-judgment evidence does not contain a Receipt for Certified Mail (PS Form 3800) reflecting a date on which these documents were mailed, nor does the evidence contain any return receipt (PS Form 3811) reflecting receipt.

The summary-judgment evidence contains affidavits by Ted and Monica Kaldis, in which each testifies as follows: "I did not know about the November 4, 2008 foreclosure sale on the Property prior to the sale taking place. I did not receive or see a notice of the foreclosure sale prior to the November 4, 2008 sale date. . . I certainly did not receive anything by way of certified mail in those regards."

The only other summary-judgment evidence that arguably relates to the alleged mailing of the foreclosure notices is the "Affidavit of Custom or Practice of Mailing" executed by Cheryl Clede. In this affidavit, Clede testifies as follows:

- "The facts stated in this affidavit are within my personal knowledge and are true and correct."

- Clede was employed by the law firm of Brown & Shapiro from July 1999 until a corporate merger in August 2009.

- Brown & Shapiro represented financial institutions, lien holders, and mortgage servicers in all aspects of the foreclosure process in Texas.

- "In connection with their representation in the foreclosure process [Brown & Shapiro] drafted, prepared and sent pre-foreclosure notices required by the Texas Property Code and the security instrument to be foreclosed."

- "My title with [Brown & Shapiro] on October 13, 2008 (the "Date of Mailing") was 'Foreclosure Processor.'"

- Clede is personally familiar with the usual and customary practice of [Brown & Shapiro] for mailing notices as it existed

7

on October 13, 2008.

- "Attached hereto [] as **Exhibits A and B**, respectively, are letters sent from [Brown & Shapiro] to Ted Kaldis and Monica Kaldis."

- As of October 13, 2008, in correspondence with borrowers such as the Kaldises, Brown & Shapiro had the following usual and customary practices: "[u]pon receipt of a foreclosure referral, [Brown & Shapiro] generated a 'Notice of Acceleration and Posting' and [']Notice of Trustee's Sale' for mailing to the Borrower." Clede then detailed additional practices of Brown & Shapiro, LLP for the mailing of these notices. In describing these practices, Clede did not refer to the receipt-for-certified-mail form or the return-receipt form.

After generally describing Brown & Shapiro's work in foreclosure matters, Clede referred to the notices in question by saying that attached to her affidavit "are letters sent from [Brown & Shapiro] to Ted Kaldis and Monica Kaldis." Aurora asserts that this statement is direct testimony that the notices were mailed. *See* Tex. Prop. Code Ann. § 51.002(e) (stating that "[t]he affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service"). We disagree. This statement is a description of the documents attached to the affidavit. Even presuming that this statement constitutes a statement that the attached documents were sent to the Kaldises, such a statement would be a conclusory statement, which is insufficient to support a summary judgment.[4] *See Hall v. Bean*, 416 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Clede's affidavit contains no direct statements of fact to the effect that these notices were deposited in the United States mail on October 13,

---

[4] In any event, this statement does not reflect whether these letters were "sent" by mail, nor does this statement reflect the date on which these letters were sent.

2008, or on any other date.[5]

Aurora also argues that in her affidavit, Clede proves that the notices were mailed to the Kaldises on October 13, 2008, based upon the circumstantial evidence of Brown & Shapiro's customary mailing routine. Aurora asserts that matters of proper addressing, stamping, and mailing may be proved by circumstantial evidence, such as the customary mailing routine of the sender's business. Though Brown & Shapiro's customary mailing routine may provide evidence of such matters, for it to do so, corroborating evidence is also required that the customary mailing routine was actually carried out in the case in question. *See Wembley Investment Co. v. Herrera*, 11 S.W.3d 924, 927–28 (Tex. 1999); *Tex. Emp. Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 92 (Tex. 1961); *Strobel v. Marlow*, 341 S.W.3d 470, 477–78 (Tex. App.—Dallas 2011, no pet.). No such evidence is contained in our summary-judgment record.

Though Clede describes Brown & Shapiro's customary mailing routine regarding correspondence with borrowers such as the Kaldises, neither Clede's testimony nor any other summary-judgment evidence corroborates that this mailing routine was carried out as to the foreclosure notices. Clede stated that "[u]pon receipt of a foreclosure referral, [Brown & Shapiro] generated a 'Notice of Acceleration and Posting' and [']Notice of Trustee's Sale' for mailing to the Borrower." Nonetheless, neither Clede's testimony nor any other evidence reflects whether or when Brown & Shapiro received a foreclosure referral. Though Clede describes Brown & Shapiro's customary mailing routine, neither her affidavit nor any other evidence corroborates that this mailing routine was actually carried out

---

[5] Clede's use in her affidavit of the defined term "Date of Mailing" to refer to October 13, 2008, by itself, is not a statement of fact that any item was mailed on that date. Aurora has asserted that the notices were mailed on that date, and affiants are free to use whatever defined terms they wish in their affidavits.

as to the foreclosure notices on or before October 13, 2008.[6] *See Wembley Investment Co.*, 11 S.W.3d at 927–28; *Wermske*, 349 S.W.2d at 92; *Strobel*, 341 S.W.3d at 477–78. Thus, the summary-judgment evidence does not contain circumstantial evidence showing that the foreclosure notices were sent by certified mail to the Kaldises and were deposited in the United States mail, postage prepaid, on or before October 13, 2008. *See Wembley Investment Co.*, 11 S.W.3d at 927–28; *Wermske*, 349 S.W.2d at 92; *Strobel*, 341 S.W.3d at 477–78.

Aurora emphasizes that Aurora only was required to serve written notice of the foreclosure sale on each of the Kaldises by certified mail and that such service is complete when each respective notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. *See* Tex. Prop. Code Ann. § 51.002 (b),(e). This is a correct statement of this statutory notice requirement. *See id*. Aurora also asserts that the Kaldises' testimony that they did not receive these notices does not mean that the notices were not sent and that the Kaldises conceded at their respective depositions that they have no knowledge as to whether these notices were mailed. Even if testimony that the debtors did not receive the notices would be insufficient to raise a fact issue as to whether the notices were properly mailed in the face of evidence that the notices were properly mailed, in the case under review, there is no direct or circumstantial evidence that the notices were properly mailed. *See Wembley Investment Co.*, 11 S.W.3d at 927–28; *Wermske*, 349 S.W.2d at 92; *Strobel*, 341

---

[6] Aurora cites *In re Halliburton*. See 2009 WL 1886659, at *3–4 (Tex. App.—Houston [1st Dist.] Jul. 2, 2009, orig. proceeding) (mem. op.). But, in that case there was direct evidence that the document in question was mailed, and the court's statement of the law does not conflict with our analysis in this case. *See id*. Aurora also relies upon *Texaco, Inc. v. Pham*, 137 S.W.3d 763, 767–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.). But, in *Pham*, in addition to the testimony regarding the district clerk's customary mailing routine, there was corroborating testimony that the mailing routine was actually carried out as to the notice in question based on evidence that an assistant district clerk entered the information into the information management system that would trigger the mailing routine. *See id*.

S.W.3d at 477–78.

Aurora relies upon the Fist Court of Appeals's opinion in *Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-00708-CV, 2008 WL 2209703, at \*2–4 (Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.) (mem. op.). In *Adebo*, unlike in the case under review, there was an affidavit from the foreclosure director directly stating that the notice had been properly sent by certified mail on the date in question, and there were documents supporting this testimony. *See id*. at \*2. Therefore, the summary-judgment evidence in *Adebo* was materially different from the summary-judgment evidence in today's case.[7]

The summary-judgment evidence contains no testimony from a person with knowledge of the facts to the effect that either notice was mailed in compliance with Property Code section 51.002. Even presuming that Brown & Shapiro's customary mailing routine, as described by Clede, satisfied all the requirements of Property Code section 51.002, there is no summary-judgment evidence showing that this mailing routine was actually carried out as to the foreclosure notices at issue. The business records of Brown & Shapiro contained in the summary-judgment evidence do not reflect or recite that either foreclosure notice was mailed on October 13, 2008 or on any other date.[8] In addition, the Kaldises have testified that they did not receive these notices. On this record, under the applicable

---

[7] The *Adebo* court also held that the debtor's mere denial that he received a notice was insufficient to raise a fact issue as to whether the notice was served. *See Adebo*, 2008 WL 2209703, at \*4. We agree, but the summary-judgment evidence in today's case contains more than the Kaldises' testimony that they did not receive the foreclosure notices.

[8] The creation of a letter that has a date at the top of it does not, by itself, show that the letter was mailed on or before that date. A letter may be drafted and then not sent at all. Or, a letter may be mailed after the date stated in the letter. The date in this letter was the last possible date for timely mailing of the foreclosure notices. In addition, the fact that the standard certified-mail items were prepared does not necessarily mean that they were used to mail the notices on or before October 13, 2008, or on any other date.

11

standard of review, we conclude that there is a genuine fact issue as to whether written notice of the foreclosure sale was given to either of the Kaldises as required by Property Code section 51.002(b) and thus as to whether there was a defect in the foreclosure-sale proceedings. *See* Tex. Prop. Code Ann. § 51.002(b),(e); *Wembley Investment Co.*, 11 S.W.3d at 927–28; *Wermske*, 349 S.W.2d at 92; *Strobel*, 341 S.W.3d at 477–78. Therefore, the trial court erred in granting summary judgment as to the Kaldises' wrongful-foreclosure claims and related claims for declaratory relief.[9] Accordingly, we sustain the Kaldises' first issue and their third issue to the extent it addresses these claims.

## B. Did the trial court err in granting summary judgment while the motion to compel production of documents was pending?

Under their fourth issue, the Kaldises argue that the trial court erred in granting summary judgment because (1) when it did so, the trial court had not yet ruled on the Kaldises' motion to compel production of documents; and (2) discovery was still ongoing. In their summary-judgment response, the Kaldises objected that it was premature for the trial court to rule on Aurora's summary-judgment motion because discovery was ongoing and because the deadline for Aurora to respond to the Kaldises' requests for production had not yet passed. After the Kaldises were not satisfied with Aurora's responses to these requests, they filed a motion to compel production of documents, which was set for hearing but had not yet been heard when the trial court granted summary judgment.

In these complaints, the Kaldises assert that the trial court erred in

---

[9] Because we have found a fact issue as to this alleged defect in the foreclosure-sale proceedings, we need not and do not address the other three alleged defects in the foreclosure-sale proceedings asserted by the Kaldises.

granting summary judgment at a time when they had not yet had an adequate opportunity for discovery.  When a party contends it has not had an adequate opportunity for discovery before a summary judgment hearing, the party must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *See Tenneco, Inc. v. Enterprise Products, Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Triad Home Renovators, Inc. v. Dickey*, 15 S.W.3d 142, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  The record does not reflect that the Kaldises took either of these steps; thus, they failed to preserve error.  *See Tenneco, Inc.*, 925 S.W.2d at 647; *Doe v. Roman Catholic Archdiocese of Galveston-Houston ex rel. Dinardo*, 362 S.W.3d 803, 811–12 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Triad Home Renovators, Inc.*, 15 S.W.3d at 145.  Accordingly, we overrule the Kaldises' fourth issue.

## C.    Did the trial court err in denying the motion to compel production of documents?

In their fifth issue, the Kaldises assert that the trial court erred when it denied their motion to compel production of documents more than two weeks after the trial court rendered its final summary judgment dismissing all of the Kaldises' claims.  On appeal, the Kaldises have not analyzed Aurora's discovery objections or the grounds for the Kaldises' motion to compel production.  Nor have the Kaldises provided any legal authorities in support of their assertion that the trial court erred in this discovery ruling.  We conclude that the Kaldises have failed to adequately brief their contention that the trial court erred in denying their motion to compel production of documents. Therefore, the Kaldises have waived this complaint. *See* Tex. R. App. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that, even though courts interpret briefing requirements reasonably and liberally, parties

13

asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of the parties' argument). Accordingly, we overrule the Kaldises' fifth issue.[10]

**D.    Did the trial court err in including dismissal-with-prejudice language in its summary judgment?**

In their sixth issue, the Kaldises assert that the trial court erred by including dismissal-with-prejudice-language in its summary judgment. This argument was not raised in the trial court. By not voicing this complaint in the trial court, the Kaldises failed to preserve error as to this issue. *See Torres v. Clark*, No. 14-11-00750-CV, 2012 WL 1694607, at \*2 (Tex. App.—Houston [14th Dist.] May 15, 2012, no pet.) (mem. op.); *Wohlhahrt v. Holloway*, 172 S.W.3d 630, 639–40 (Tex. App. Houston [14th Dist.] 2005, pet. denied). Accordingly, we overrule the Kaldises' sixth issue.

**E.    Did the trial court err in denying the emergency motion to set supersedeas bond or otherwise postpone eviction?**

In their seventh issue, the Kaldises assert that the trial court erred by denying "Plaintiffs' Emergency Motion for Court to Set Supersedeas Bond in the Form of Rent and/or, Otherwise, Postpone Plaintiffs' Eviction from the Property" (the "Emergency Motion"). After the trial court rendered its final summary judgment, Aurora sought to enforce its judgment in the forcible-entry-and-detainer case, which had been made final by appeal. In response, the Kaldises filed the Emergency Motion, in which they asked the trial court to issue an order setting a supersedeas bond under Texas Rule of Appellate Procedure 24.2 and 24.3, or to

---

[10] On remand, this ruling does not prevent the trial court from revisiting the motion to compel as to the Kaldises' wrongful-foreclosure claims, nor does this ruling preclude the parties from conducting further discovery regarding these wrongful-foreclosure claims. *See Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 467 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

order the Kaldises to pay rent to Aurora in an amount not to exceed $1,500 per month and to prohibit Aurora from evicting the Kaldises from the Property during the pendency of the appeal in this case.

In the judgment from which the Kaldises appeal in the case under review, the trial court ordered that the Kaldises take nothing; and the trial court did not award any party any amount of money or court costs. The judgment is not for the recovery of money or property, nor is there any other apparent interest of the judgment creditor that needs protection pending appeal. In this context, the trial court did not err in declining to set an amount and type of security that the judgment debtor must post to supersede the judgment. *See* Tex. R. App. P. 24.2, 24.3; *Bradshaw v. Sikes*, No. 02-11-00169-CV, 2013 WL 978782, at *5 & n.12 (Tex. App.—Fort Worth Mar. 14, 2013, pet. filed) (mem. op.).

The main goal of the Emergency Motion was to effect an arrangement whereby the Kaldises could continue living on the Property and to postpone enforcement of the county court's final judgment in the forcible-entry-and-detainer action pending the appeal in this case. The county court's judgment is final by appeal and is not the subject of the case under review. In the Emergency Motion, the Kaldises did not argue or show that prohibiting the enforcement of the county court's judgment would protect the district court's jurisdiction in this case. The trial court did not err in denying the Emergency Motion. *See In re Victor Enterprises, Inc.*, 308 S.W.3d 455, 457 (Tex. App.—Dallas 2010, orig. proceeding). Accordingly, we overrule the Kaldises' seventh issue.[11]

---

[11] The Kaldises have not briefed any arguments on appeal in which they challenge the trial court's summary judgment as to the wrongful-eviction claim. Thus, there is no basis to disturb this part of the judgment. *See Fish v. Marsters*, 14-06-00129-CV, 2007 WL 1438555, at *10 (Tex. App.—Houston [14th Dist.] May 17, 2007, pet. denied) (mem. op.).

## IV. CONCLUSION

There is a genuine fact issue as to whether written notice of the foreclosure sale was given to either of the Kaldises as required by Texas Property Code section 51.002(b) and thus as to whether there was a defect in the foreclosure-sale proceedings. Therefore, the trial court erred in granting summary judgment as to the Kaldises' wrongful-foreclosure claims and related claims for declaratory relief. Accordingly, we reverse the trial court's judgment to the extent it addresses these claims and we remand to the trial court for further proceedings. We conclude the Kaldises' other appellate arguments are incorrect, and we therefore overrule their second issue and their fourth through seventh issues, as well as their third issue to the extent the third issue addresses claims other than the wrongful-foreclosure claims and related claims for declaratory relief. Thus, we affirm the remainder of the judgment.

/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.

16